# No. 25-5130

IN THE

# United States Court of Appeals for the Sixth Circuit

JORGE ANDUJAR AND FRANKLIN PENA BATISTA
PLAINTIFFS - APPELLANTS

V.

HUB GROUP TRUCKING, INC.
DEFENDANT - APPELLEE.

On Appeal from the United States District Court
For the Western District of Tennessee
Case No. 2:24-cv-02296-TLP-cgc

## BRIEF OF PLAINTIFFS-APPELLANTS

Harold Lichten, Esq.
Matthew Thomson, Esq.
Lichten & Liss-Riordan, P.C.
729 Boylston St., Ste. 2000
Boston, MA 02116
Telephone: (617) 994-5800
hlichten@llrlaw.com
mthomson@llrlaw.com

Peter Winebrake, Esq.
Mark Gottesfeld, Esq.
Winebrake & Santillo, LLC
715 Twining Road, Suite 211
Dresher, PA 19025
Telephone: (215) 884-2491
pwinebrake@winebrakelaw.com
mgottesfeld@winebrakelaw.com

*Counsel for Plaintiffs-Appellants*

## CORPORATE DISCLOSURE STATEMENT

Pursuant to Sixth Circuit Rule 26.1, Plaintiffs-Appellants hereby certify that there is no information to disclose pursuant to Fed.R.App.P. 26.1. Plaintiffs are neither a subsidiary nor affiliate of any publicly owned corporation not named in the appeal.  Plaintiffs are not aware of any publicly owned corporation or its affiliate, not a party to the appeal, that has a substantial financial interest in the outcome of litigation.

Dated: April 23, 2025

/s/ Harold Lichten_____
Attorney for Plaintiffs-Appellants

TABLE OF CONTENTS

I.    STATEMENT IN SUPPORT OF ORAL ARGUMENT ...................................1

II.   STATEMENT OF JURISDICTION..................................................................1

III.  STATEMENT OF THE ISSUES ....................................................................1

IV.   STATEMENT OF THE CASE .......................................................................3

   A.  Factual Background .................................................................................3

   B.  Procedural History ..................................................................................6

V.    SUMMARY OF THE ARGUMENT .............................................................8

VI.   ARGUMENT..................................................................................................10

   A.  Standard of Review................................................................................10

   B.  The District Court's Application of Section 187(2) of the Restatement was
       Erroneous ...............................................................................................10

      1.  Tennessee Courts have Adopted the Section 187(2) of the Restatement
          (Second) Conflict of Laws in Resolving Choice-of-Law Disputes 10

      2.  The District Court Correctly Observed it Would Violate a Fundamental
          Public Policy of New Jersey to Apply Tennessee Law .................12

      3.  Under a "Fact-Intensive" Approach to the Section 187(2), it is Clear that
          New Jersey has a Materially Greater Interest in the Outcome of the
          Case .............................................................................................22

      4.  Alternatively, there was No Material Connection between Tennessee and
          the Work Performed by Plaintiffs that Would Justify the
          Application of Tennessee Law ......................................................34

   C.  The Choice-of-Law clause in this case is also unenforceable under the
       holding of Diakon ...............................................................................37

   D.  Even if Tennessee Law Applied to this case, It cannot be given
       extraterritorial application to cover New Jersey-based Drivers.................39

VII.  CONCLUSION..............................................................................................45

TABLE OF AUTHORITIES

**Cases**

*Adler v. Gruma Corp.*,
    No. 23-3177, -- F.4th --, 2025 WL 1119925 (3d Cir. Apr. 16, 2025) ................25

*Bank of New York v. Janowick*,
    470 F.3d 264 (6th Cir. 2006) ............................................................................36

*Barnes Group v C & C Products Inc.*,
    716 F. 2d 1023 (4th Cir. 1983) .........................................................................25

*Bimel-Walroth Co. v. Raytheon Co.*,
    796 F.2d 840 (6th Cir. 1986) ............................................................................43

*Blackwell v. Sky High Sports Nashville Operations, LLC*,
    523 S.W.3d 624 (Tenn. Ct. App. 2017) ...................................................... 11, 35

*CAPLOC LLC v Liberty Mutual Insurance*,
    2022 WL 19685 (N.D. Tex. 2022) ....................................................................36

*Carrow v. FedEx Ground Package Sys., Inc.*,
    2019 WL 7184548 (D.N.J. Dec. 26, 2019) ................................................. 19, 39

*Cole v. Mileti*,
    133 F.3d 433 (6th Cir. 1998) ............................................................................10

*Cotter v. Lyft, Inc.*,
    60 F. Supp. 3d 1059 (N.D. Cal. 2014) ..............................................................43

*Curtis v Youngblade*,
    878 F. Supp. 1224 (N.D. Iowa 1995) ...............................................................36

*DaimlerChrysler Corp. Healthcare Benefits Plan v. Durden*,
    448 F.3d 918 (6th Cir. 2006) ....................................................... 22, 25, 28, 32

*D'Ambrosio v. Marino*,
    747 F.3d 378 (6th Cir. 2014) ............................................................................10

*DCS Station Mgmt. v Castillo*,
    435 F.3d 892 (8th Cir. 2006) ..................................................................... 26, 36

*De Angelis v. Nat'l Ent. Grp., LLC*,
    2018 WL 4334553 (S.D. Ohio Sept. 11, 2018) ....................................................37

*Ferrer v. MedaSTAT USA, LLC*,
    145 F. App'x 116 (6th Cir. 2005) ........................................................................42

*Gomez v. Great West Life Insurance Co.*,
    638 F. Supp. 3d 1156 (S.D. Cal. 2022)................................................................26

*Goodwin Bros. Leasing v. H & B Inc.*,
    597 S.W.2d 303 (Tenn. 1980)...............................................................................11

*Guy v. Absopure Water Co.*,
    No. 20-12734, 2023 WL 1814212 (E.D. Mich. Feb. 8, 2023) ............................21

*Hargrove v. Sleepy's, LLC*,
    106 A.3d 449 (N.J. 2015) ................................................................................5, 16

*Hataway v. McKinley*,
    830 S.W.2d 53 (Tenn. 1992)................................................................................10

*Highway Equip. Co. v. Caterpillar Inc.*,
    908 F.2d 60 (6th Cir. 1990) .............................................................................9, 42

*Johnson v. Diakon Logistics, Inc.*,
    44 F.4th 1048 (7th Cir. 2022) .......................................................... 3, 9, 37, 38

*Klig v. Deloitte LLP*,
    36 A.3d 785 (Del. Ch. 2011) ...............................................................................41

*Lakeland Regional Hospital v Rite-Aid Corp.*,
    2011 WL 13291826 (E.D. Mich 2011).................................................................36

*Lubinski v. Hub Group Trucking, Inc.*,
    690 F. App'x 377 (6th Cir. 2017) ................................................................ 11, 33

*Lupian v. Joseph Cory Holdings*,
    *LLC*, 240 F. Supp. 3d 309 (D.N.J. 2017)......................................................43, 45

*McLemore v. Gumucio*,
    No. 22-5458, 2023 WL 4080102 (6th Cir. June 20, 2023) ................................40

iii

*Mill's Pride v. Continental Insurance Company*,
   300 F.3d 701 (6th Cir. 2002) ...............................................................................10

*Morales v. V.M. Trucking, LLC,*
   2019 WL 2932649 (N.J. Super. Ct. App. Div. July 9, 2019) ..............................19

*Ortiz v. Goya Foods, Inc.*,
   2020 WL 1650577 (D.N.J. Apr. 3, 2020) .................................................... 43, 44

*Panos v. Timco Engine Ctr., Inc.,*
   1197 N.C. App. 510, 677 S.E.2d 868 (N.C. Ct. App. 2009) ..............................41

*Rao v. St. Jude Med. S.C., Inc.*,
    2020 WL 4060670 (D. Minn. May 26, 2020) ....................................................42

*Risinger v. SOC LLC*,
   936 F. Supp. 2d 1235 (D. Nev. 2013).................................................................43

*Robles v. Comtrak Logistics, Inc.*,
   No. 15-02228, 2016 WL 11528831 (W.D. Tenn. July 19, 2016) ............... 34, 35

*Rogers v. Wells Fargo Bank, N.A.*,
    64 Kan. App. 2d 290, 551 P.3d 142 (Kan. App. 2024) .....................................43

*Ruiz v. Affinity Logistics Corp.*,
   667 F.3d 1318 (9th Cir. 2012) ................................................................. passim

*Somers v. Converged Access, Inc.*,
   911 N.E.2d 739 (Mass. 2009) .........................................................................14

*Tavares v. S-L Distribution Co.*,
   No. 1:13-CV-1313, 2014 WL 12951783 (M.D. Pa. Jan. 14, 2014) ........... passim

*Union Underwear Co. v. Barnhart,*
   50 S.W.3d 188 (Ky. 2001) ................................................................................42

*Williaford v. Holiday Inns, Inc.,*
   1988 WL 77627, at *2, (Tenn. Ct. App. July 28, 1988)………………………..39

*Williams v. Smith*,
   465 S.W.3d 150 (Tenn. Ct. App. 2014)..............................................................27

*Wise v. Zwicker  & Associates, P.C.*,
   780 F.3d 710 (6th Cir. 2015) ................................................................... passim

iv

*Wright v. Freedom Mortg. Corp.*,
  2009 WL 10671337 (S.D. Cal. May 26, 2009) .................................................37

**Statutes**

28 U.S.C. § 1294 .........................................................................................1

28 U.S.C. § 1332(d) ....................................................................................1

Illinois Wage Payment and Collection Act,
  820 ILCS 115/1 to 115/15 .................................................... 37, 38

M.G.L. c. 149, § 148B ..............................................................................14

N.J. Stat. § 34:11-4.7 ........................................................................ passim

Restatement (Second) of Conflicts of Laws § 187(2) .................................. passim

*See* Restatement (Second) of Conflict of Laws § 188 .................................34

Tenn. Code Ann. § 50-2-103 ....................................................................40

Tenn. Code Ann. § 50-6-115(b)(2) ...........................................................40

Tenn. Code Ann. § 50-7-207 ...............................................................5, 20

Tenn. Code. 50-2-110(a)(2) .....................................................................21

## I.    Statement in Support of Oral Argument

Plaintiffs-Appellants believe that oral argument would assist the Court in evaluating the important legal issues presented in this case.

## II.    Statement of Jurisdiction

Plaintiffs-Appellants ("Jorge Andujar and Franklin Pena Batista") appeal from the District Court's Order granting Defendant-Appellee Hub Group Trucking, Inc.'s ("Hub Group") Motion to Dismiss.  *See* Order Granting Motion to Dismiss, RE 58, Page ID # 533-542 (dated Feb. 13, 2025).  This decision constituted a final judgment that was entered on February 14, 2025.  *See* Judgment, RE 59, Page ID # 543.  Plaintiffs filed a timely notice of appeal on February 18, 2025 under Fed. R. App. P. 4(a)(1)(A). *See* Notice of Appeal, RE 60, Page ID # 544-545. This Court has jurisdiction pursuant to 28 U.S.C. § 1291 and 28 U.S.C. § 1294.

The District Court had jurisdiction pursuant to 28 U.S.C. § 1332(d) because Plaintiffs and members of the proposed class are citizens of states different from that of Hub Group; there are over 100 members in the proposed class; and the aggregate damages sought on behalf of Plaintiffs and the putative class exceeds $5 million.

## III.    Statement of the Issues

This case raises significant questions regarding whether an employer operating in a state that has enacted strong worker protection laws – such as a

higher minimum wage – may exempt itself from those wage laws by contractual reference to the laws of a less protective and unrelated jurisdiction.

Specifically, the only issue raised in this appeal is whether Hub Group, a Delaware corporation headquartered in Illinois, that operates delivery terminals in New Jersey, may exempt itself from the New Jersey wage laws – including its wage payment statute and overtime statute – by requiring its New Jersey drivers to sign an agreement designating the laws of Tennessee to apply to the parties' relationship.

The District Court in this case misapplied the "choice-of-law" Rules contained in Section 187(2) of the Restatement (Second) Conflict of Laws and dismissed Plaintiffs' claims under the New Jersey wage laws, which are among the most protective in the nation.  *See* Order Granting Motion to Dismiss, RE 58, Page ID # 533-542. The District Court held that Plaintiffs could not assert claims under New Jersey's wage laws because their contracts purported to designate Tennessee law to apply to their disputes. *See id.* at Page ID # 539-541. However, courts that have addressed this type of "choice-of-law" question based on the same basic facts have consistently held that workers are subject to the wage laws of the state in which they worked, and that a contractual provision purporting to apply the laws of

a different state is unenforceable.[1] This Court should hold the same and should

reverse the District Court's decision dismissing Plaintiffs' claims.

## IV.    Statement of the Case

A. Factual Background

Plaintiffs are New Jersey truck drivers who operate out of a New Jersey

terminal owned by Defendant. Hub Group is incorporated in Delaware and has a

large national headquarters in Oak Brook, Illinois. Although Hub Group has

asserted that it operates "two intermodal terminals" and a "consolidation and

fulfillment facility" in Tennessee, *see* Order Granting Motion to Dismiss, RE 58,

Page ID # 538, the reality is that Hub Group is "a nationwide company," *see id.*,

that according to its own website has over 50 terminals, consolidation &

fulfillment facilities, offices, and other facilities in 21 different states, *see id.*

---

[1]      *See Johnson v. Diakon Logistics, Inc.*, 44 F.4th 1048, 1053 (7th Cir. 2022)
(holding that Illinois drivers could proceed with claims under Illinois wage laws
despite Virgina "choice-of-law" provision, because the "test for employee status
under the [Illinois] Act does not depend on (and often disregards) contractual
designations. … It follows that nothing about choosing Virginia law affects
plaintiffs' claims under the [Illinois] Act."); *Ruiz v. Affinity Logistics Corp.*, 667
F.3d 1318, 1324 (9th Cir. 2012) (holding that California drivers may pursue claims
under California law despite a Georgia choice-of-law provision, because California
had a materially greater interest than Georgia in determining whether the
California drivers were independent contractors or employees); *Tavares v. S-L
Distribution Co.*, No. 1:13-CV-1313, 2014 WL 12951783, at *7 (M.D. Pa. Jan. 14,
2014) (holding that Massachusetts's wage laws and strict "ABC" employment test
applied to delivery drivers' work in Massachusetts, despite Pennsylvania choice-
of-law provision in drivers' contracts).

Plaintiffs worked full-time as truck drivers for Hub Group. They lived in New Jersey during the time that they worked for Hub Group;[2] they picked-up products to deliver each day from a New Jersey facility and they started and ended each work day in New Jersey;[3] they were supervised by and reported to Hub Group employees who worked at Hub Group's New Jersey terminal;[4] they did not report to and were not supervised by anyone working in Tennessee;[5] they signed their contracts in New Jersey;[6] and they never traveled to Tennessee in connection with their work for Hub Group.[7] As such, they have absolutely no connection to Tennessee.

In this class action lawsuit, Plaintiffs assert claims on behalf of themselves and other New Jersey drivers against Hub Group for violations of the New Jersey Wage Payment Law ("NJWPL"), N.J.S.A. §§ 34:11-4.1, *et seq.* and the New Jersey Wage and Hour Law ("NJWHL"), N.J.S.A. 34:11-56a, *et seq.* Plaintiffs seek reimbursement of improper deductions taken from their pay under the NJWPL and payment of unpaid overtime compensation under the NJWHL. The central allegation in the Complaint is that although Hub Group designated

---

[2] *See* Declaration of Jorge Andujar and Franklin Pena Batista, RE 51-9, Page ID # 237 and 240 at ¶ 11.
[3] *See id.* at Page ID # 236 and 239, ¶¶ 6, 8.
[4] *See id.* at Page ID # 235 and 238, ¶ 4.
[5] *See id.*
[6] *See id.* at Page ID # 237 and 240, ¶ 12.
[7] *See id.* at Page ID # 236 and 239, ¶ 9.

Plaintiffs and other New Jersey truck drivers as "independent contractors," and denied them all protections of the New Jersey wage laws, Plaintiffs and other New Jersey truck drivers were actually "employees" who are entitled to overtime pay and full payment of wages. The issue of whether Plaintiffs were misclassified is determinative of Hub Group's liability in this case.

Under New Jersey law, Plaintiffs are almost certain to prevail based on New Jersey's strict ABC test for evaluating independent contractor misclassification and its prohibition on wage deductions. *See Hargrove v. Sleepy's, LLC*, 106 A.3d 449, 453 (N.J. 2015) (setting forth strict "ABC" employment test that presumes an individual providing services is an employee); *see also* N.J.S.A. §§ 34:11-4.4.[8] As discussed in greater detail below, under Tennessee law, Plaintiffs have no claim or cause of action.[9]

---

[8]    As discussed below, the New Jersey "ABC" test **presumes an individual is an employee** unless the employer can make certain showings regarding the individual employed.  *See* p. 21, *infra.*

[9]    In 2019, Tennessee radically altered its test for who is an independent contractor as opposed to an employee, adopting the employer-friendly, 20-part IRS test, while rejecting the previously-adopted ABC test established by court decisions.  *See* Tenn. Code Ann. § 50-7-207.  Worse yet, Tennessee's new law specifically provides that the type of "leased operator" contract that Plaintiffs were required to sign is specifically excluded from Tennessee's definition of "employment." *See* Tenn. Code Ann. § 50-7-207(e)(1). This statutory exclusion would prohibit Plaintiffs from challenging their employment status under Tennessee law.

B. Procedural History

Plaintiffs filed this Action in the District of New Jersey on September 6,

2023. *See* Complaint, RE 1, Page ID # 1. Hub Group moved to transfer the Action

to the Western District of Tennessee pursuant to a forum selection clause in the

parties' agreement. *See* Motion to Transfer, RE 9, Page ID # 31. That motion was

granted and the case was transferred on April 22, 2024. *See* Opinion, RE 27, Page

ID # 387-397.

Hub Group then filed a motion to dismiss wherein it argued that Plaintiffs'

NJWPL and NJWHL claims failed as a matter of law because Plaintiffs had

relinquished all rights under the relevant wage statutes based on the following

language in the relevant agreements:

> [T]his Agreement, including any and all claims or disputes arising out
> of, in connection with, or relating to this Agreement, or the transactions
> or relationship between the parties contemplated and established by this
> Agreement, shall be governed and interpreted by the laws of the State
> of Tennessee, without regard to the choice-of-law rules of that State or
> any other jurisdiction.

*See* Mem. of Law in Support of Motion to Dismiss, RE 48-1, Page ID # 61.

The parties agreed below that Tennessee has adopted the Restatement

(Second) of Conflict of Laws concerning choice-of-law provisions in contracts.

*See* Def.'s Mem. of Law in Support of Motion to Dismiss, RE 48-1, Page ID # 65

n.2. Section 187 of the Restatement provides that where parties to an agreement

provide for the application of a particular state's law to the transaction at issue, that selection will be honored unless either:

(a) the chosen state has no substantial relationship to the parties or the transaction and there is no other reasonable basis for the parties' choice; or

(b) application of the law of the chosen state would be contrary to a fundamental public policy of a state which has ***a materially greater interest than the chosen state in the determination of the particular issue***, and which under the Rule of Section 188, would be the state of the applicable law in the absence of an effective choice of law between the parties.

Restatement (Second) of Conflict of Laws § 187(2) (emphasis added).

In applying the exception found in subsection 187(2)(b), the District Court correctly assumed that it would violate a fundamental public policy of the State of New Jersey to apply the laws of Tennessee, based on Plaintiffs' showing that New Jersey has strictly regulated independent contractor misclassification with some of the toughest laws and regulations in the country, and Tennessee has essentially no regulation on this issue at all. *See* Order Granting Motion to Dismiss, RE 58, Page ID # 539-540. However, the Court granted Hub Group's motion to dismiss and held that the Tennessee choice-of-law provision was enforceable because it was not clear "why New Jersey's interest in worker classification *is materially greater than* Tennessee's…," *see id.* at Page ID # 540, failing to undertake any

particularized analysis of the policies at issue and each state's relationship to the dispute.[10]

Thus, the central issue in this appeal is very narrow and not a close question; New Jersey has by far the greater interest in the particular issue in this case, i.e., whether New Jersey truck drivers who operate out of New Jersey terminals are properly classified as employees and entitled to the protections of the New Jersey wage laws. The District Court's decision suggesting otherwise constitutes reversible error.

## V.    Summary of the Argument

A contractual choice-of-law provision may not be enforced where a) the chosen state has no substantial relationship to the parties or the transaction and there is no other reasonable basis for the parties' choice; or b) the law of the chosen state would be contrary to a fundamental policy of a state which has a materially greater interest in the determination of the particular issue and which would be the state of the applicable law in the absence of an effective choice of law by the parties.  Restatement (Second) Conflict of Laws § 187(2).

_____

[10]      It appears that the District Court arrived at this erroneous conclusion by asking which state has a greater interest in the general concept of "worker classification," as opposed to asking which state has a greater interest "***in the determination of the particular issue***," which is whether Hub Group's New Jersey truck drivers are employees entitled to full payment of wages and overtime pay, or whether they are independent contractors exempt from those protections.

The District Court erred in its application of Section 187(2) of the Restatement. As explained below, Hub Group's Tennessee choice-of-law provision is unenforceable because (i) application of Tennessee law is contrary to the fundamental policy of New Jersey, which has a materially greater interest in the outcome of the case compared to Tennessee; and (ii) Tennessee does not have a material connection to the claims asserted in this lawsuit.

Hub Group's motion to dismiss Plaintiffs' New Jersey wage claims also should have been denied on two independent and alternative grounds, neither of which were addressed in the District Court's decision: (i) based on the Seventh Circuit's decision in *Diakon*, it is clear that the NJWPL and its "ABC" employment test supply the definition for determining whether Plaintiffs are employees or independent contractors, and the parties cannot nullify that statutory definition by contract, including through a choice-of-law provision, *Johnson v. Diakon Logistics, Inc.*, 44 F.4th 1048, 1052 (7th Cir. 2022) ("If the critical test for determining whether plaintiffs count as employees for purposes of the Act comes from the statute rather than a contract, then the Service Agreement is irrelevant, no matter what it says."); and (ii) when faced with the choice of applying Tennessee's wage statutes or the laws of New Jersey, New Jersey law would apply to New Jersey workers because Tennessee's statutes do not have extraterritorial effect, and the parties cannot expand a statute's geographic reach by merely including a

9

choice-of-law clause in a contract. *See Highway Equip. Co. v. Caterpillar Inc.*, 908 F.2d 60, 62 (6th Cir. 1990) (affirming dismissal of claim under Illinois Franchise Disclosure Act despite a contractual choice-of-law provision selecting the law of Illinois, because the statute "does not apply to dealerships outside Illinois…").

## VI.    Argument

### A. Standard of Review

A district court's order granting a motion to dismiss for failure to state a claim is reviewed *de novo*, and a lower court's ruling on a choice-of-law issue is also reviewed *de novo*. *See generally D'Ambrosio v. Marino*, 747 F.3d 378, 383 (6th Cir. 2014); *Mill's Pride v. Continental Insurance Company*, 300 F.3d 701, 704 (6th Cir. 2002).

### B. The District Court's Application of Section 187(2) of the Restatement was Erroneous

#### 1. Tennessee Courts have Adopted Section 187(2) of the *Restatement (Second) Conflict of Laws* in Resolving Choice-of-Law Disputes

Federal courts sitting in diversity apply the choice-of-law rules of the forum state, which in this case is Tennessee. *See Cole v. Mileti*, 133 F.3d 433, 437 (6th Cir. 1998). The Supreme Court of Tennessee has looked to the Restatement (Second) Conflict of Laws when deciding conflict of law issues. *See Hataway v. McKinley*, 830 S.W.2d 53, 59 n.2 (Tenn. 1992) (adopting Section 145 of the

10

Restatement and holding that it embodied "the most desirable model currently available for use as a framework for making choice-of-law decisions").

More specifically, Tennessee has adopted the Restatement (Second) of Conflict of Laws concerning choice-of-law provisions in contracts, applying Section 187(2) of the Restatement to determine the enforceability of such provisions. *See Goodwin Bros. Leasing v. H & B Inc.*, 597 S.W.2d 303, 307 n.2 (Tenn. 1980); *Blackwell v. Sky High Sports Nashville Operations, LLC*, 523 S.W.3d 624, 633 (Tenn. Ct. App. 2017) (applying Section 187(2) and declining to enforce California choice-of-law provision in contract "concerning activities taking place in Tennessee").

Section 187(2) of the Restatement states that where parties to an agreement provide for the application of a particular state's law to the transaction at issue, that selection will be honored unless either:

(a) the chosen state has no substantial relationship to the parties or the transaction and there is no other reasonable basis for the parties' choice; or

(b) application of the law of the chosen state would be contrary to a fundamental public policy of a state which has a materially greater interest than the chosen state in the determination of the particular issue, and which under the Rule of Section 188, would be the state of the applicable law in the absence of an effective choice of law between the parties.

Restatement (Second) of Conflict of Laws § 187(2); *accord Lubinski v. Hub Group Trucking, Inc.*, 690 F. App'x 377, 379 (6th Cir. 2017) ("pursuant to the

11

Restatement of Conflict of Laws § 187(2)(b), a court will not apply a contractual choice-of-law provision if application of the law of the chosen state would be contrary to a fundamental policy of a state which has a materially greater interest ... in the determination of the particular issue.") (internal quotation marks omitted).

2.  The District Court Correctly Observed That It Would Violate a Fundamental Public Policy of New Jersey to Apply Tennessee Law

Pursuant to the second exception found in Section 187(2), Plaintiffs must show that 1) application of the law of the chosen state would be contrary to a fundamental public policy of New Jersey; and that 2) New Jersey has a materially greater interest in determination of the particular issue.  *See* Restatement § 187(2).

The District Court correctly held that the New Jersey wage laws constitute a fundamental public policy of the State and that applying Tennessee law would be contrary to that public policy.  *See* Order Granting Motion to Dismiss, RE 58, Page ID # 539-540.

"[A] fundamental policy may be embodied in a statute which makes one or more kinds of contracts illegal or which is designed to protect a person against the oppressive use of superior bargaining power." Restatement § 187, cmt. G. Pursuant to this definition, courts have consistently held that wage-and-hour laws constitute a fundamental public policy of a state. Moreover, those same courts have held that it would violate a fundamental public policy to apply the law of another state that offered fewer protections to workers.

12

In *Ruiz v. Affinity Logistics Corp.*, 667 F.3d 1318 (9th Cir. 2012), a group of California delivery drivers filed a class action challenging their classification as independent contractors and alleging violations of the California wage laws. *See id.* at 1321. The drivers' contracts contained a provision stating that Georgia law applied to any disputes. *Id.* On appeal, the question was whether the district court erred in applying the principles of Restatement § 187(2). *Id.* at 1323.

The Ninth Circuit held that Georgia law was contrary to a fundamental public policy of California because Georgia's "test" for whether an individual was an employee or independent contractor undermined the broader "employee" definition applicable in California. *Id.* at 1323. In particular, "under Georgia law, if a contract designates the relationship between the parties to be one of principal and independent contractor, this designation is presumed to be true," whereas in California, "once a plaintiff comes forward with evidence that he provided services for an employer, the employee has established a prima facie case that the relationship was one of employer/employee." *Id.* at 1323. Thus, the Ninth Circuit held that "under Georgia law, while the drivers are presumptively independent contractors, under California law, the court must consider protective legislation designed to aid employees to determine the employee-independent contractor issue. Therefore, application of Georgia law in this case would contravene the

13

fundamental California public policy in favor of ensuring worker protections." *Id.* at 1324.

Similarly, *Tavares v. S-L Distribution Co.*, the court addressed this issue in the context of independent contractor delivery drivers who asserted claims under the Massachusetts wage laws. *See Tavares*, 2014 WL 12951783, at *1 (M.D. Pa. Jan. 14, 2014). The plaintiffs were Massachusetts residents and made deliveries to stores in Massachusetts. *Id.* The drivers' contracts stated that they were "construed in accordance with, the laws of the Commonwealth of Pennsylvania. *Id.* at *4.

Because Pennsylvania (like Tennessee) has adopted Section 187(2) of the Restatement, the district court in *Tavares* first analyzed whether the application of Pennsylvania law would be contrary to a fundamental policy of Massachusetts. *Id.* at *5. The court observed that Massachusetts uses a strict "ABC" test to determine whether a worker was an employee or independent contractor, and that this constituted a fundamental public policy of the state.[11]  *Id.* at *6. This was because

---

[11]    The Massachusetts "test' is similar to New Jersey's ABC test. In order to defeat the presumption of employee status, the employer must show: "(1) the individual is free from control and direction in connection with the performance of the service, both under his contract for the performance of service and in fact; and (2) the service is performed outside the usual course of business of the employer; and (3) the individual is customarily engaged in an independently established trade, occupation, profession or business of the same nature as that involved in the service performed." M.G.L. c. 149, § 148B.

misclassification of employees "results in lost tax and insurance revenues…," and "[i]n addition to harming employees, misclassification gives employers an 'unfair competitive advantage over employers who correctly classify their employees and bear the concomitant financial burden.'" *Id.* at *6, quoting Somers v. Converged Access, Inc.,* 911 N.E.2d 739, 750 (Mass. 2009).

The *Tavares* court next held that it would violate Massachusetts public policy to apply Pennsylvania law. *See Tavares*, 2014 WL 12951783, at *6. Where the Massachusetts ABC test presumed that persons performing work are employees, "Pennsylvania … presumes a contractual designation of an 'independent contractor' relationship to be true unless a claimant introduces evidence proving otherwise." *Id.* Thus, "[t]he practical effect of choosing Pennsylvania law over Massachusetts law would be to substantially disadvantage any party seeking to establish the existence of an employee/employer relationship." *Id.* at *6-*7. The court went on to hold that:

> [T]he application of Pennsylvania law to Plaintiffs' statutory claims would be contrary to a fundamental policy of Massachusetts. To hold otherwise would allow employers to easily circumvent fundamental Wage Act protections. An employer, particularly an employer based outside Massachusetts, would merely need to (1) require workers to sign an "independent contractor agreement" rather than an "employment agreement" and (2) include in that agreement a forum selection clause and/or choice-of-law provision stipulating that the law of some other state shall apply to any disputes. That simple measure would allow an end run around Massachusetts' independent contractor statute and the application of a less-stringent alternative. At the same time, employers unlucky enough to be based in Massachusetts would

15

likely be forced to abide by Section 148B's strict three-part test and grant employee status to persons performing essentially identical duties.

*Id.* at *7.

Consistent with *Ruiz* and *Tavares*, New Jersey's wage laws and its ABC employment test constitute a fundamental public policy of New Jersey, and it would violate that fundamental public policy to apply the law of Tennessee to work performed in New Jersey.

The New Jersey ABC Test is grounded in a clear policy choice in favor of employment status, which represents a fundamental public policy of New Jersey. The New Jersey Supreme Court has characterized the NJWPL as "a remedial statute [that] should be liberally construed." *Hargrove v. Sleepy's, LLC*, 106 A.3d at 457. The *Hargrove* Court held "that employment-status issues raised under the WPL or WHL – i.e., whether a person retained to provide services to an employer is an employee or independent contractor—are governed by the 'ABC' test." *Id.* at 465.

The "ABC" test ***presumes an individual is an employee*** unless the employer can make certain showings regarding the individual employed, including:

(A) Such individual has been and will continue to be free from control or direction over the performance of such service, both under his contract of service and in fact; and
(B) Such service is either outside the usual course of the business for which such service is performed, or that such service is performed outside of all the places of business of the enterprise for which such service is performed; and

16

(C) Such individual is customarily engaged in an independently established trade, occupation, profession or business.
N.J.S.A. 43:21-19(i)(6). "[T]he *failure to satisfy any one of the three criteria results in an 'employment' classification*."

*Id.* at 458 (emphasis supplied; internal citation omitted); *see also id.* at 464 (ABC Test "presumes that the claimant is an employee and imposes the burden to prove otherwise on the employer").

The three independent criteria of the ABC test "may cast a wider net" than tests that require the weighing or balancing of various factors in determining employment status. *See id.* However, the ABC test's exacting standards best reflected the remedial purpose underlying the NJWPL and NJWHL. *See id.*

New Jersey has remained vigilant in protecting New Jersey citizens against the harms caused by the misclassification of workers as independent contractors. For example, in 2019, the State published a "Report of Governor Murphy's Task Force on Employee Misclassification," which is replete with language stressing New Jersey's ongoing fight against independent contractor classification and explicitly discusses the ABC Test. *See* Report, RE 51-12, Page ID # 250-269. The Task Force was created based on the State's concern that independent contractor misclassification:  (i) "deprives New Jersey workers of important legal rights and protections;" (ii) "harms law-abiding businesses who follow the rules by enabling non-compliant employers to gain an unfair competitive advantage;" and (iii) "harms the State's economy in many ways, including the loss of State and federal

17

payroll taxes, with some audits suggesting that misclassification deprives New Jersey of over $500 million in tax revenue every year." New Jersey Executive Order No. 25 (May 3, 2018), RE 51-16, Page ID # 315; *see also* New Jersey Executive Order 96, RE 51-17 Page ID # 320.[12]

The test for independent contractor status is just the start, and not the end, of New Jersey's worker protection statutes. New Jersey guarantees overtime compensation for the truck drivers at issue in this case, at one and one-half times New Jersey's minimum wage. *See* N.J.S.A. § 34:11-56a4(f). The 2024 minimum wage in New Jersey was $15.13 per hour.[13] So the guaranteed overtime rate was $22.695 per hour.

Moreover, the NJWPL prohibits an employer from making withholdings or diversions from the wages of employees except for limited withholding or diversions permitted within the statute. *See* N.J.S.A. §§ 34:11-4.4 ("[n]o employer may withhold or divert any portion of an employee's wages unless . . . required or

---

[12]    In 2020 and 2021, New Jersey passed additional legislation to crack down on independent contractor misclassification.  *See* N.J. Legis., Assembly Bill No. 5890, 219th Legis. (2021) (empowering the New Jersey Dept. of Labor to seek injunctions against employers for violations stemming from employee misclassification).  The Legislature also passed Assembly Bill 5892, which imposed significant fines and penalties for those companies that evade providing proper insurance (such as for workers compensation and unemployment) by misclassifying employees as independent contractors.  *See* N.J. Legis., Assembly Bill No. 5892, 219th Legis. (2021), ) RE 51-25, Page ID # 418-432.
[13]    *See* NJ DOL Website, RE 51-20, Page ID # 364-366.

empowered to do so by New Jersey or United States law" or such deduction falls

within one of the eleven exemptions found within the NJWPL).[14]

In *Morales v. V.M. Trucking, LLC*, the New Jersey appellate court held that

deductions from truck drivers' wages for insurance, lease payments, and dues to a

third-party did not fall within the eleven exemptions found within the NJWPL. *See*

2019 WL 2932649, at *7-*10 (N.J. Super. Ct. App. Div. July 9, 2019). The Court

explained that the NJWPL "was designed to protect employees' wages and to

guarantee receipt of the fruits of their labor." 2019 WL 2932649 at *7. One federal

court has plainly stated that "[f]undamentally, the NJWPL is not on the books to

enforce private contractual arrangements, but to void those arrangements that defy

the public policy it embodies." *Carrow v. FedEx Ground Package Sys., Inc.*, 2019

WL 7184548, at *6 (D.N.J. Dec. 26, 2019).

Additional provisions of the New Jersey wage laws demonstrate the

fundamental public policy underlying NJWPL and NJWHL. New Jersey law

prohibits workers from waiving their statutory rights.  *See* N.J. Stat. § 34:11-4.7

("It shall be unlawful for any employer to enter into or make any agreement with

---

[14]     In 2019, the New Jersey legislature passed, and the Governor signed a new law dramatically increasing the penalties under the NJWPL and NJWHL to include treble damages and attorney fees for Wage Act and minimum wage violations. *See* N.J. Legis., Senate Bill No. 1790, 218th Legis. (2019), RE 51-21, Page ID # 368-388.

any employee for the payment of wages of any such employee otherwise than as provided in this act."); N.J. Stat. Ann. § 34:11-56a25 ("Any agreement between the employee and the employer to work for less than the minimum fair wage shall be no defense to the action."). In addition, the New Jersey wage laws impose criminal penalties on employers who intentionally violate the law. *See* N.J.S.A. 34:11-4.10; 34:11-56a22.

When considering the New Jersey ABC test and Tennessee's "employee" definition (even assuming that Tennessee law granted any remedy for the wage claims asserted here, which it does not), it is no exaggeration to conclude that the two tests are at the very opposite ends of the spectrum and that application of Tennessee law would violate a fundamental public policy of New Jersey. Similar to the Massachusetts statute at issue in *Tavares*, New Jersey law presumes employment status, whereas Tennessee law contains no such presumption and places the burden on the employee to prove an employee/employer relationship and requires consideration of no less than 20 factors. *See* Tenn. Code Ann. § 50-7-207(b)(2)(B)(i)-(xx). Even more significantly, Tennessee law explicitly excludes "leased-operators" of motor vehicle from being considered an employee. Tenn. Code Ann. § 50-7-207(e)(1). Because Plaintiffs are leased-operators pursuant to their contractual agreements with Hub Group, *see* Agreement, RE 48-4, Page ID # 170-227, this exception is fatal to their claims.

Moreover, Tennessee has no overtime statute, whereas the Plaintiffs have asserted a claim for overtime pay under the unique protections of New Jersey law, which would provide them with an overtime rate of more than $22 per hour. *See* N.J.S.A. § 34:11-56a4(f).[15] Clearly there is a palpable conflict between Tennessee's overtime protections for truck drivers – or lack thereof, and New Jersey's extensive statutory protections afforded to workers like Plaintiffs and other New Jersey drivers.

In regard to unlawful wage deductions, Tennessee permits any deductions that an employer wishes to impose as long as the employer obtains written authorization by the employee. *See* Tenn. Code. 50-2-110(a)(2). As such, Tennessee provides virtually no prohibition against deductions from wages, and none of the additional civil and criminal penalties provided in New Jersey.

Simply stated, when all of New Jersey's legislative, judicial, and executive actions are taken together, it is not a close question that New Jersey's ABC test and the NJWPL and NJWHL constitute a fundamental public policy of New Jersey,

---

[15]     Hub Group argued below that applying Tennessee law would not leave Plaintiffs without a remedy because they could bring their overtime claims under the federal Fair Labor Standards Act ("FLSA").  *See* Mem. of Law in Support of Motion to Dismiss, RE 48-1, Page ID # 70.  However, it is uncontroverted that Plaintiffs would not be entitled to overtime pay under the FLSA's "Motor Carrier Act" exemption because they drive vehicles weighing over 10,001 pounds.  *See* 29 U.S.C. § 213(b)(1); *see also Guy v. Absopure Water Co.*, No. 20-12734, 2023 WL 1814212, at *7 (E.D. Mich. Feb. 8, 2023) (describing requirements of the MCA exemption).

and that applying the less protective (and virtually non-existent) laws of Tennessee would violate New Jersey's intentional public policy choices that were implemented to protect New Jersey workers, ensure full collection of tax revenues, and protect law-abiding New Jersey employers.

3.  Under a "Fact-Intensive" Approach to the Section 187(2), it is Clear that New Jersey has a Materially Greater Interest in the Outcome of this Case

Because it would violate a fundamental public policy of New Jersey to apply Tennessee law in this case, the remaining question is whether New Jersey has a "materially greater interest" in this particular matter than Tennessee. This Court has characterized this part of the analysis as "fact intensive." *Wise v. Zwicker & Associates, P.C.*, 780 F.3d 710, 718 (6th Cir. 2015); *see also DaimlerChrysler Corp. Healthcare Benefits Plan v. Durden*, 448 F.3d 918, 924 (6th Cir. 2006).[16]

In determining which state "has a materially greater interest in the particular issue under consideration," this Court engages in a detailed and robust analysis of the states' competing policy interests. For example, in *DaimlerChrysler*, *supra*, two women – Ann and Rita – claimed to be the surviving spouse of a deceased autoworker named Douglas. *DaimlerChrysler*, 448 F.3d at 920. Seeking clarity regarding the disposition of benefits, the pension plan sought "a declaration as to

---

[16]     In *DaimlerChrysler* and *Wise*, this Court was tasked with applying Ohio law and federal common law, respectively.  However, the analysis in both cases was undertaken pursuant to the Section 187(2) of the Restatement.  *DaimlerChrysler*, 448 F.3d at 924; *accord Wise*, 780 F.3d at 715-16.

which of the two claimants is Douglas's surviving spouse…." *Id.* at 921. The Plan

documents contained a Michigan choice-of-law provision. *Id.* Nevertheless, Ann

argued that Ohio law should have dictated the district court's surviving spouse

analysis. *DaimlerChrysler*, 448 F.3d at 922. Thus, under Restatement Section

187(2)(b), this Court was called upon "to determine whether Ohio has a materially

greater interest than Michigan in determining whether Ann or Rita is Douglas's

surviving spouse." *Id.* at 927. Crucially, in making this determination, the Court

recognized that both states had *some* interest in the matter. *See id.* But that was not

the end of the analysis. Instead, this Court undertook a detailed evaluation of each

state's relative interest:

> Michigan has some interest in the determination of rights and duties under the
> Plan. The Plan was negotiated, executed, and administered in Michigan.
> DaimlerChrysler is headquartered in Michigan, as is the union which
> negotiated the Plan on behalf of the employees. However, none of the
> Michigan entities involved in this litigation has an interest in which claimant
> prevails. The Plan will pay out the same amount of money regardless of to
> whom it is ultimately paid. Michigan does not have any interest in whether
> Ann's or Rita's marriage is declared valid. Neither marriage relationship has
> any connection to the state of Michigan. Yet Ohio has a very significant
> interest in the determination of the validity of those relationships. Ann's
> marriage was solemnized in Ohio and her husband was an Ohio resident when
> he married another woman. Although Ohio's interest in protecting Ann is
> arguably diminished somewhat by the fact that Ann is now a Tennessee
> resident, Ohio still has some interest in protecting an individual who entered
> into a marriage contract in Ohio and lived as an Ohio resident for several years
> thereafter. Furthermore, Rita resided with Douglas in Ohio from their
> wedding until his death. Ohio has a substantial interest in imposing on its
> residents its policy of requiring individuals to obtain sufficient documentation
> of a prospective spouse's availability or suffer the consequences of their
> failure to do so. Under the circumstances of this case, Ohio has a materially

> greater interest than Michigan in having its law applied to determine which claimant is Douglas's surviving spouse.

*Id.*

Likewise, in *Wise*, *supra*, an Ohio plaintiff asserted that a law firm violated Ohio consumer rights law by seeking to collect attorney's fees for work associated with the collection of plaintiff's credit card debt. *See Wise*, 780 F.3d at 711. The credit card agreement contained a Utah choice-of-law provision. *See id.* at 712. Utah law "freely enforces fee-shifting provisions in consumer credit agreements," while Ohio law makes such provisions "unenforceable." *Id.* at 714. This Court set out to answer Restatement Section 187(2)(b)'s question of "whether Ohio 'has a materially greater interest than the chosen state in the determination of the particular issue.'" *Wise*, 780 F.2d at 716. In this regard, the Court was critical of the district court's analysis, which "simply noted that each state had some policy interest in the enforceability or non-enforceability of the [fee-shifting] provision." *Id.* at 717. This generalized approach was insufficient. A proper Section 187(2)(b) analysis required consideration of the particulars regarding the time place, and manner of the underlying contractual relationship. *See id.* at 716-17. In reversing the district court, this Court observed that "a careful examination of the contacts of each state to the agreement was necessary to determine whether Ohio has a materially greater interest in the fee-shifting provision . . . ." *Id.* at 718.

Both *DaimlerChrysler* and *Wise* demonstrate that, in analyzing Restatement Section 187(2)(b)'s "materially greater interest" consideration, it is not sufficient to summarily observe – as the District Court did here – that both states harbor *some* interest in the matter at hand. Instead, district courts are required to delve into the particulars behind each state's competing interest in the matter. This is consistent with the approach taken by other courts, such as the Third Circuit, which recently held that in a choice-of-law analysis under Section 187(2), "both the geographic ties and the states' policies regarding the issue in question are important considerations." *Adler v. Gruma Corp.*, No. 23-3177, -- F.4th --, 2025 WL 1119925, at *12 (3d Cir. Apr. 16, 2025).

The courts generally agree that the most important factor for determining "materially greater interest" is where the subject matter of the controversy takes place. For example, in *Barnes Group v C & C Products Inc.*, 716 F. 2d 1023 (4th Cir. 1983) an Ohio domiciled corporation sought to enforce its non-compete agreements (with an Ohio choice-of-law provision) against several of its former employees who lived and worked in states whose laws, unlike Ohio, did not permit such provisions. *See id.* at 1031-1032. The Fourth Circuit reversed the district court's application of Ohio law stating "and it is equally plain, applying this approach, that the local jurisdictions involved here Alabama, Louisiana, South Carolina, and Maryland--- have far greater interests than does Ohio in applying

25

their law… with contracts involving their residents that were to be performed solely within their boundaries" *Id.*; *see also Gomez v. Great West Life Insurance Co.*, 638 F. Supp. 3d 1156, 1164 (S.D. Cal. 2022) (although an Illinois insurance company had reasonable basis for selecting an Illinois choice-of-law clause, California law would be applied because California is where policy was purchased and where insured lived).

And in *DCS Station Mgmt. v Castillo*, 435 F.3d 892 (8th Cir. 2006), the Eighth Circuit similarly held that where a Nebraska employee, working for an Ohio based corporation, signed a non-compete agreement containing an Ohio choice-of-law provision, Nebraska had a "materially greater interest" than Ohio with respect to the protection of Nebraska employees, and therefore Nebraska law must be applied. *Id.* at 896 ("the services at issue were to be performed in Nebraska, the former employees reside in Nebraska, the prohibition of the non-compete clause directly and materially affects employment in Nebraska… the district court properly concluded that Nebraska… had a materially greater interest in the agreements").

When determining whether a particular state has a materially greater interest in enforcement of its ***wage laws*** to work performed within its borders, the decisions in *Ruiz* and *Tavares* are again instructive.

26

In *Ruiz*, where the question was whether California workers had waived their rights pursuant to a Georgia choice-of-law provision, the Ninth Circuit held that California had "a materially greater interest than Georgia in the outcome of this case." 667 F.3d at 1324. In reaching this conclusion, the Court considered that 1) the drivers completed the work for Affinity in California; 2) the subject matter of the contract dealt with completing deliveries in California; and 3) the domicile of the drivers is in California. *See id.* On the other hand, "[t]he only connection with Georgia is that Georgia is where Affinity is incorporated ," and accordingly, "California has a materially greater interest than Georgia in determining whether the drivers are independent contractors or employees of Affinity." *Id.* The Court made clear that the relevant inquiry is "which state in the circumstances presented, will suffer greater impairment of its policies if the other state's law is applied."[17] *Id.* There was no evidence that Georgia would suffer if California law was applied to the work of the California drivers. *Id.* at 1325.

In *Tavares v. S-L Distribution*, the Court considered whether Massachusetts had a materially greater interest than Pennsylvania in the outcome of the case.

---

[17] Tennessee courts have applied a similar rule when determining the enforceability of a choice-of-law provision. *See Williams v. Smith*, 465 S.W.3d 150, 157 (Tenn. Ct. App. 2014) (enforcing Missouri choice-of-law provision in insurance contract where "no injustice to the people of North Carolina [i.e., the state of plaintiff's domicile] would occur in the application of Missouri law to the facts of this case").

Plaintiffs were "Massachusetts residents who perform services in Massachusetts," and were thus precisely the type of persons that the Massachusetts independent contractor test and wage laws were meant to protect. 2014 WL 12951783, at *7. The Court acknowledged that the defendant was headquartered in Pennsylvania and Pennsylvania had *some* interest "in the uniformity and predictability" of contracts of Pennsylvania companies. *Id.* However, this was outweighed "by Massachusetts' fundamental interest in protecting its residents from unlawful exploitation by their employers," and by the fact that Massachusetts was "the state which will be harmed by the loss of tax and insurance revenues if resident employees are misclassified as independent contractors." *Id.*

Had the District Court engaged in a particularized analysis called for in *DaimlerChrysler* and *Wise* and the other cases cited above, New Jersey -- which requires putative employers to satisfy a strict "ABC Test" to overcome the presumption of employment status – would be found to have "a materially greater interest than [Tennessee] in the determination of the particular issue" in this case.

Indeed, this Court's decision in *DaimlerChrysler* indicates that when determining whether one state has a materially greater interest than the other, a court examines the geographic contacts in light of the specific policy at issue.  *See generally DaimlerChrysler*, 448 F.3d at 927-28 (identifying the various contacts

with the two states involved and performing a qualitative assessment of whether the contact was significant in light of the particular issue in the case).[18]

Here, the geographic ties all point to New Jersey having a materially greater interest in the outcome of this case. Plaintiffs resided in New Jersey; Plaintiffs reported to supervisors in New Jersey; Plaintiffs reviewed and signed their contracts in New Jersey; and Hub Group signed one of the two Plaintiffs' contracts in New Jersey. *See* Andujar Agreement, RE 48-4 (Andujar Agreement signed by Hub Group's local terminal manager); Batista Agreement, RE 48-5 (Batista Agreement signed by Hub Group employee with Tennessee area code).[19] The subject matter of the contract was the delivery of goods from Defendant's New Jersey terminal, where Plaintiffs reported each day for work and, thus, the place of performance is New Jersey.

The only contact with Tennessee is that Hub Group purchased Comtrak Logistics in 2006, and that entity was once headquartered in Tennessee. *See* Hub Group Form 10-K, RE 51-3, PAGE ID # 219. In *Ruiz* and *Tavares*, the defendant at least had the countervailing argument that the companies were headquartered or

---

[18] For example, in *DaimlerChrysler*, although two of the entities involved in that case were citizens of Michigan, this did not support enforcement of the Michigan choice-of-law provision because neither the Michigan entities nor the State of Michigan had "any interest in whether Ann's or Rita's marriage is declared valid." 448 F.3d at 927.

[19] The Page ID numbers on the Agreements are illegible.

incorporated in the state designated in the choice-of-law provision and that the chosen state therefore had *some* interest in providing its businesses with uniformity and predictability in their employment relationships. Hub Group cannot even make this argument because it is incorporated in Delaware and headquartered in Illinois. Simply put, there is no evidence that Tennessee has any interest in having its law apply to this dispute at all; New Jersey has a materially greater interest in the outcome of this case because in the circumstances presented, New Jersey "will suffer greater impairment of its policies if the [Tennessee's] law is applied." *See Ruiz,* 667 F.3d at 1324.

In addition, the specific policy at issue is whether New Jersey employees are misclassified as independent contractors and are owed unpaid wages and overtime compensation, a policy that directly affects New Jersey workers (such as Plaintiffs). Like in *Tavares*, the Plaintiffs in this case are "precisely the type of persons that the [New Jersey] independent contractor test and wage laws was meant to protect." 2014 WL 12951783, at *7. And given that the work was performed in New Jersey and Plaintiffs were New Jersey residents, New Jersey will be "the state which will be harmed by the loss of tax and insurance revenues if resident employees are misclassified as independent contractors." *Id.* In addition, law-abiding New Jersey businesses that compete with Hub Group will be disadvantaged if their competitors are permitted to significantly lower their labor

costs by exempting themselves from the New Jersey ABC test and the New Jersey wage laws. Thus, New Jersey-based employers are harmed if Hub Group is permitted to apply its Tennessee choice-of-law provision in this case. *See* New Jersey Executive Order No. 25, RE 51-16, Page ID # 315 (noting that misclassification of employees "harms law-abiding businesses who follow the rules by enabling non-compliant employers to gain an unfair competitive advantage").

The District Court's error was that it failed to analyze and compare the interests of each state in defining whether New Jersey workers are employees entitled to the protection of the wage laws. As discussed above, in relevant part, Section 187(2) of the Restatement holds that a contractual choice-of-law provision will not be enforced if its application "would be contrary to a fundamental public policy of a state which has a materially greater interest than the chosen state in the determination ***of the particular issue***…." Restatement (Second) of Conflict of Laws § 187(2) (emphasis added).  In similar cases, the "particular issue" was defined as the determination of whether the specific group of plaintiffs were independent contractors or employees, *Ruiz*, 667 F.3d at 1324; in other words, the courts have asked which state had a materially greater interest "in the outcome of this case." *Tavares*, 2014 WL 12951783, at *7. Nevertheless, the District Court ignored the relevant facts regarding where the work took place, and failed to

31

address the significant difference between New Jersey and Tennessee law regarding worker misclassification; instead, the court merely asked which state had a greater interest in the general concept of "worker classification," and held that it was not clear that either state had a greater interest in this subject. *See* Order Granting Motion to Dismiss, RE 58, Page ID # 540.

This analysis was devoid of any comparison between the two states and makes no logical sense. The term "materially greater interest" is intrinsically a comparison between the two states in question and their relationship to the transaction. *See Wise*, 780 F.3d at 716 (holding that for the "materially greater interest" question, "courts evaluate the relationship of the two states to the agreement"). But under the District Court's reasoning, every state would have an equal interest in the abstract theory of "worker classification" if one were to disregard the unique laws of each jurisdiction and the relevant facts regarding where the work took place. This analysis renders Section 187(2)(b)'s "material greater interest" test essentially meaningless, as evidenced by the Court's decision.[20] Based on *Wise* and *DaimlerChrysler*, the District Court should have

---

[20] The reason for the District Court's error appears to be that some courts, in discussing Tennessee's adoption of the Section 187(2) of the Restatement, shortened their summary of the rule and excluded the phrase "in the determination of the particular issue," just leaving the question as which state has a "materially greater interest…." By ignoring the phrase, the District Court neglected to identify the "particular issue" that is relevant in this case, and somehow concluded that

undertaken a fact-intensive review of the state laws and the state contacts at issue. It failed to do so, requiring reversal.

Hub Group may argue that in an unpublished decision, this Court addressed the applicability of its Tennessee choice-of-law provision in a case brought by Illinois drivers against Hub Group. *See Lubinski v. Hub Group Trucking, Inc.*, 690 F. App'x 377, 379 (6th Cir. 2017). In that case, the Court held in a single sentence that the plaintiff "offer[ed] nothing of substance to support his claim that Illinois has a 'materially greater interest' in the classification of employees as independent contractors (or vice versa) than would Tennessee." *Id. Lubinski* is easily distinguishable because it dealt with a different state's wage laws (Illinois), and in this case, Plaintiffs have provided the Court with an expansive record regarding the state interests in play, unlike the plaintiffs in *Lubinski*.

Finally, there cannot be any serious dispute that New Jersey law would apply in the absence of a contractual choice-of-law provision. Under Section 188 of the Restatement, in order to determine the applicable law, courts consider: (a) the place of contracting, (b) the place of negotiation of the contract, (c) the place of performance, (d) the location of the subject matter of the contract, and (e) the domicile, residence, nationality, place of incorporation and place of business of the

---

Tennessee and New Jersey had an equal interest in the issue of independent contractor misclassification.

33

parties. *See* Restatement (Second) of Conflict of Laws § 188. "These contacts are to be evaluated according to their relative importance with respect to the particular issue." *Id.* Here, all of these factors weigh in Plaintiffs' favor requiring application of New Jersey law and none support the application of Tennessee law. *See* Section IV.A, *supra.* (discussing place of performance in New Jersey, Plaintiffs' New Jersey residence, and additional contacts with New Jersey). Thus, in the absence of any contractual command, New Jersey's statutory wage and hour laws would undoubtedly apply in this case.

    4.   Alternatively, there was No Material Connection between Tennessee and the Work Performed by Plaintiffs that Would Justify the Application of Tennessee Law

This is not the first time that Hub Group has attempted to impose Tennessee law on a group of its drivers who did not provide any services in Tennessee. In *Robles v. Comtrak Logistics, Inc.*, No. 15-02228, 2016 WL 11528831 (W.D. Tenn. July 19, 2016), Hub Group sought to enforce the same Tennessee choice-of-law clause against a group of its truck drivers who worked in California. However, the district court denied Hub Group's motion to dismiss, holding that "the transactions have no material connection to Tennessee." *Robles*, 2016 WL 11528831, at *3. As the Court held in *Robles*:

> None of the parties is a domiciliary, resident, or citizen of Tennessee. Plaintiffs entered into the Contracts in California. It is not alleged that any performance was to take place in Tennessee. Defendants represent that they have some "operations" in Tennessee, but there is no demonstrated

connection between those operations and this case. Without more, there is no material connection between Tennessee and the parties' transactions. The choice-of-law provision is not enforceable.

*Id.* (internal citations omitted).

The facts are no different here. However, the District Court here attempted to distinguish *Robles* by claiming that it was presented with facts that were not before the *Robles* court, but that is simply not true. It was clear in *Robles* that Hub Group purported to enter into the agreements in Tennessee. *See* Hub Group's Br. in *Robles*, No. 2:15-cv-02228, RE 92 Page ID # 1378. Additionally, the court here makes much of the fact that one of Hub Group's intermodal facilities is in Memphis and is a "flagship" facility that it inherited with the Comtrak purchase. *See* Order Granting Motion to Dismiss, RE 58, Page ID # 538. But the court held in *Robles*, which is equally true here, that Hub Group cannot and does not point to any connection between its Memphis facility and the deliveries that Plaintiffs performed out of a New Jersey terminal. *See Robles*, 2016 WL 11528831, at *3 (there is "no demonstrated connection between those operations and this case"). In this regard, the holding in *Robles* is consistent with Tennessee's application of Section 187(2). *See Blackwell v. Sky High Sports Nashville Operations, LLC*, 523 S.W.3d 624, 633 (Tenn. Ct. App. 2017) ("The simple fact that [defendant's] parent company was founded in California over a decade ago and now operates several facilities there is simply not sufficient to show a logical connection to the

transaction at issue in this case."). The Sixth Circuit has also endorsed this approach. *See Bank of New York v. Janowick*, 470 F.3d 264, 270 n.3 (6th Cir. 2006) (holding that under the Restatement, Kentucky law, *not* the law of New York (the law chosen in the agreement) must be applied because "the present dispute does not involve any parties domiciled in New York, nor any business conducted in New York… the only basis for the parties' choice is that Irving, [the designated plan trustee] which is no longer the contract holder, was based in New York").[21]

In sum, the only conceivable relationship that Hub Group has to Tennessee is that it maintained facilities there, just as it did in twenty other states. If this were sufficient to support a Tennessee choice-of-law provision, then any large employer with facilities in all fifty states (such as Walmart, Amazon, or Starbucks) could choose a state with no wage laws and then demand that all of its employees across the country agree to be subject to the laws of that state. This is a bridge too far.

---

[21]    *Accord*, *CAPLOC LLC v Liberty Mutual Insurance*, 2022 WL 19685, at *6 (N.D. Tex. 2022) (because both parties lacked a reasonable relationship with New York, choice-of-law clause would not be enforced); *Curtis v Youngblade*, 878 F. Supp. 1224, 1255 (N.D. Iowa 1995) (no substantial relationship under 187(2)(a) despite the fact that plaintiff was incorporated in Delaware); *DCS Sanitation Mgmt.*, 435 F. 3d at 896 (no substantial relationship established where only connection to the case is that plaintiff's corporate headquarters is in Ohio, but the workers and their employer were all located in Nebraska); *Lakeland Regional Hospital v Rite-Aid Corp.*, 2011 WL 13291826, at *7 (E.D. Mich 2011) (even though contracts were signed in Illinois, this is insufficient to establish a substantial relationship to the transaction under 187(2)(a)).

*See generally Wright v. Freedom Mortg. Corp.*, 2009 WL 10671337, at \*4 (S.D. Cal. May 26, 2009) (observing that allowing an employer to contract around the minimum wage law by imposing a choice-of-law provision "could lead to deliberate attempts to pay employees under, for example, Kansas's minimum wage law…," which at the time set a minimum wage of $2.65 an hour).

C.  The Choice-of-Law clause in this case is also unenforceable under the holding of *Johnson v. Diakon Logistics, Inc.*, 44 F.4th 1048 (7th Cir. 2022)

Plaintiffs are not asserting claims based on their contract with Hub Group. Instead, they are asserting claims under the NJWPL and NJWHL, which by their nature are statutes "designed to defeat rather than implement contractual agreements." *De Angelis v. Nat'l Ent. Grp., LLC*, 2018 WL 4334553, at \*4 (S.D. Ohio Sept. 11, 2018) (describing purpose of the FLSA).

In a case almost identical to this one, a Virginia-based trucking company, Diakon Logistics, attempted to enforce its Virginia choice-of-law clause against a group of Illinois-based drivers who claimed that they were misclassified as independent contractors under the Illinois Wage Payment and Collection Act, 820 ILCS 115/1 to 115/15, ("IWPCA"). *See Johnson v. Diakon Logistics, Inc.*, 44 F.4th 1048, 1050 (7th Cir. 2022). In *Diakon*, the plaintiffs asserted that pursuant to Restatement Section 187(2)(b), Illinois law, not the law of Virginia, must be

applied.[22] However, the District Court held otherwise and enforced the Virginia

choice-of-law provision. *See id.* at 1051.

On appeal, the Seventh Circuit (Easterbrook, J.) sidestepped the Restatement

entirely, holding that since the plaintiffs were Illinois-based drivers and were

asserting Illinois *statutory* rights (as opposed to contractual rights), their claims

were governed by the Illinois Wage Payment and Collections Act ("IWPCA"), 820

ILCS 115/1 to 115/15, and not Virginia law:

> If the critical test for determining whether plaintiffs count as employees
> for purposes of the Act comes from the statute rather than a contract,
> then the Service Agreement is irrelevant, no matter what it says. This
> means that Illinois would not honor either the declaration of
> independent-contractor status or the choice-of-Virginia-law clause….
> Another way of saying this is that plaintiffs' claims to undiminished
> wages arise from their work in Illinois, not from their contracts.

*Diakon*, 44 F.4th at 1052.

This Court should reach the same conclusion. Plaintiffs resided and worked

in New Jersey, and they have no relationship whatsoever with Tennessee. They are

asserting New Jersey statutory rights, and New Jersey has extremely protective

legislation regarding independent contractor misclassification and the damages that

result therefrom. This Court should hold, like the Seventh Circuit, that Plaintiffs'

claims should be governed by the wage laws of the state in which they worked,

---

[22]    The plaintiffs in Diakon were represented by Lichten & Liss-Riordan, PC,
one of the firms representing Plaintiffs in this matter.

regardless of any contractual terms included in their agreement, because the

NJWPL (just like the IWPCA) provides the applicable "employee" definition, and

that statute is intended to void agreements "that defy the public policy" of the

statute. *Carrow*, 2019 WL 7184548, at *6.

### D. Even if Tennessee Law Applied to this Case, it cannot be Given Extraterritorial Application to Cover New Jersey-based Drivers

Lastly, Hub Group and the District Court have framed the question as

whether New Jersey law applies to Plaintiffs' wage-and-hour claims, or whether

Tennessee's wage laws shall govern pursuant to the choice-of-law provision. *See*

Order Granting Motion to Dismiss, RE 58, Page ID # 541 (holding that "the Court

will uphold the challenged choice-of-law provision and apply Tennessee law to the

dispute"). However, even if somehow Tennessee's wage laws (or the absence

thereof) applied to this case, that does not end the inquiry, because applying those

laws to New Jersey workers would require the extraterritorial application of

Tennessee wage law to New Jersey workers, something which is not permitted.

It is generally assumed in Tennessee that the state's laws are not applied

extraterritorially. *See, e.g.*, *Williaford v. Holiday Inns, Inc.,* 1988 WL 77627, at *2,

(Tenn. Ct. App. July 28, 1988) (noting that statutes "have of themselves no

extraterritorial force" and finding that Tennessee Human Rights Act could not be

applied extraterritorially) (citations omitted). This is consistent with a general

presumption against extraterritorial application of state laws that has been

recognized by this Court.  For example, in *McLemore v. Gumucio*, the Court described the assumption that "a statute's geographic reach is usually confined within the borders of the government that enacts it," and explained that "an ordinary reader might well assume, for example, that a Tennessee auctioneering statute does not impose licensing requirements on auctioneers located in Alaska or New Zealand."  No. 22-5458, 2023 WL 4080102, at *1 (6th Cir. June 20, 2023).

The relevant state wage law, the Tennessee Wage Regulation Act ("TWRA"), Tenn. Code Ann. § 50-2-103, does not contain any language expanding the Act's coverage to apply outside of Tennessee; to the contrary, the statute appears to presume that it will only apply in Tennessee.  For example, in defining the types of employment covered by the Act, the Legislature exempted employment by the government of the United States and "***this state***," as well as "any county, incorporated city or town, or other municipal corporation or political subdivision ***of the state***."  Tenn. Code Ann. § 50-2-103 (emphasis added).  The Legislature did not deem it necessary to exclude employment by *other* state governments, given that the law was presumptively limited to work performed in Tennessee. Had the Legislature intended for the TWRA to apply to out-of-state activity, it could have said so in clear language, such as the language included in Worker's Compensation Law. *See* Tenn. Code Ann. § 50-6-115(b)(2) ("If an employee in this state … temporarily leaves this state incidental to the employee's

employment and receives an accidental injury arising out of and in the course and scope of the employee's employment, the employee… shall be entitled to the benefits of this chapter as if the employee was injured in this state," provided that certain requirements are met).

Moreover, the Tennessee Department of Labor is vested with jurisdiction to enforce the TWRA. The online complaint form used by the agency informs workers that if their work "was completed both inside and outside of Tennessee," the employee should "contact the United States Department of Labor Wage and Hour Division," indicating the agency's understanding that the Tennessee wage laws are limited to work performed within Tennessee. *See* https://www.tn.gov/content/tn/workforce/employees/labor-laws/labor-laws-redirect/wages-breaks/wcf.html.

It is not surprising that Tennessee's wage laws would be limited to work performed within Tennessee. Indeed, most state employment laws do not apply to workers who are exclusively outside the state's borders.[23] As this Court has noted,

---

[23]    *See generally Panos v. Timco Engine Ctr., Inc.,* 197 N.C. App. 510, 677 S.E.2d 868, 873–74 (N.C. Ct. App. 2009) (refusing to apply North Carolina's Wage and Hour Act to a nonresident employee who worked primarily outside of North Carolina, despite a North Carolina choice-of-law provision in employment agreement, as "'[l]egislation is presumptively territorial and confined to limits over which the law-making power has jurisdiction'"); *Klig v. Deloitte LLP,* 36 A.3d 785, 797–98 (Del. Ch. 2011) (holding that plaintiff who did not work in Delaware could not assert a claim under the Delaware Wage Act because "Delaware can

if one state were to impose policy choices on the employment practices of sister states, it risks "running afoul of the Commerce Clause of the United States Constitution," and would create obvious choice-of-law difficulties. *Ferrer v. MedaSTAT USA, LLC*, 145 F. App'x 116, 119 (6th Cir. 2005), quoting *Union Underwear Co. v. Barnhart,* 50 S.W.3d 188 (Ky. 2001) (holding that Kentucky Civil Rights Act did not apply extraterritorially).

The geographic limitations of the TWRA are significant, because it is well-settled that even where there is an enforceable choice-of-law provision in a contract requiring application of a particular state's statutes, a court must apply that state's law "as written" because "general choice-of-law provisions in contracts **do not** alter the language in a statute or add language to a statute…." *Rao v. St. Jude Med. S.C., Inc.*, 2020 WL 4060670, at *4 (D. Minn. May 26, 2020) (emphasis in original), report and recommendation adopted, 2020 WL 4059876 (D. Minn. July 20, 2020); *see also Highway Equip. Co. v. Caterpillar Inc.*, 908 F.2d 60, 62 (6th Cir. 1990) (affirming district court decision that plaintiff could not bring a claim under the Illinois Franchise Disclosure Act because it "does not apply to

---

readily regulate within its borders, but cannot regulate the wages of an individual working in another state, outside of Delaware's jurisdiction").

dealerships outside Illinois…," despite a contractual choice-of-law provision designating the law of Illinois to apply).[24]

This identical question has recently been addressed in two wage-and-hour cases brought on behalf of employees. *See Ortiz v. Goya Foods, Inc.*, 2020 WL 1650577, at *4 (D.N.J. Apr. 3, 2020); *Lupian v. Joseph Cory Holdings, LLC*, 240 F. Supp. 3d 309, 313 (D.N.J. 2017), aff'd, 905 F.3d 127 (3d Cir. 2018). In *Ortiz*, Pennsylvania workers claiming they were misclassified as independent contractors asserted claims under the New Jersey wage laws pursuant to a New Jersey choice-of-law clause in their contracts. *See* 2020 WL 1650577, at *1. In *Lupian*, Illinois drivers claiming independent contractor misclassification sought to enforce a similar New Jersey choice-of-law clause in their contracts. *See* 240 F. Supp. 3d at 312-13. Both courts refused enforcement of the clauses, on the basis that New

---

[24]     *See also Bimel-Walroth Co. v. Raytheon Co.*, 796 F.2d 840, 841-43 (6th Cir. 1986) (holding that despite Wisconsin choice-of-law provision in contract, Wisconsin Fair Dealership Law (WFDL) did not apply to dispute because the statute "does not apply to a plaintiff located outside Wisconsin"); *Rogers v. Wells Fargo Bank, N.A.*, 64 Kan. App. 2d 290, 308, 551 P.3d 142, 153 (Kan. App. 2024) ("Parties cannot expand a state statute's express geographical reach by merely including a choice-of-law clause in a contract."); *Cotter v. Lyft, Inc.*, 60 F. Supp. 3d 1059, 1064-65 (N.D. Cal. 2014) (holding that a choice-of-law clause in a contract does not support the extraterritorial expansion of a state statute when the geographical limitations in the statute exclude one of the parties); *Risinger v. SOC LLC*, 936 F. Supp. 2d 1235, 1251 (D. Nev. 2013) ("The choice of selecting Nevada law to govern the contract requires the Court to determine Nevada law. [Plaintiff] in effect asks this Court both to apply Nevada law *and* to change it to afford him (and other extraterritorial plaintiffs) relief. This the Court cannot do.").

Jersey does not apply its wage laws extra-territorially, so out-of-state workers could not bring New Jersey wage claims even if their contracts so provided. *Ortiz*, 2020 WL 1650577, at *4; *Lupian*, 240 F. Supp. 3d at 313-14. The courts concluded that the workers' claims had to be brought under the wage laws of the state in which they worked, rather than expanding New Jersy's wage laws based on the parties' contracts. *Ortiz*, 2020 WL 1650577, at *5 (plaintiff was given leave to amend his complaint to assert a claim under Pennsylvania law as the plaintiff's "home state of Pennsylvania has a marked interest in ensuring that persons who live and work in that state have wage protections."); *Lupian*, , 240 F. Supp. at 314 ("the IWPCA is the proper statute to apply in this case where Illinois workers are claiming violations of wage laws in connection to conduct occurring within Illinois"), subs. history at 905 F.3d 127 (3d Cir. 2018).

The same analysis should apply here. When choosing between applying the Tennessee wage laws or New Jersey wage laws to the work performed by New Jersey truck drivers, the only permissible choice is to allow the application of New Jersey's statutes. The New Jersey wage laws specifically define an "employer" to include any individual, partnership, corporation, or various other entities "employing any person in this State." *Id.* 34:11-4.1. On the other hand, Tennessee has little to no interest in providing employment protections to individuals outside of Tennessee and the State has a well-established public policy against governing

out-of-state conduct. The Tennessee choice-of-law provision in the Plaintiffs'
contracts merely permits application of Tennessee law as it is written; and as
written, the wage laws of Tennessee do not apply to out-of-state employees.
Accordingly, this Court should reverse the District Court's decision on this basis
alone and hold that the NJWPL and NJWHL are the "proper statute[s] to apply in
this case where [New Jersey] workers are claiming violations of wage laws in
connection to conduct occurring within [New Jersey]." *Lupian*, 240 F. Supp. 3d at
314.

## VII.    Conclusion

For the reasons stated above, Plaintiffs-Appellants respectfully request that
the Court reverse the decision of the District Court dismissing their NJWPL and
NJWHL claims, and remand so that Plaintiffs may seek to vindicate their non-
waivable statutory rights under New Jersey law.

ADDENDUM

DESIGNATION OF RELEVANT
DISTRICT COURT DOCUMENTS

| DATE | RECORD NO. | DESCRIPTION |
|------|-----------|-------------|
| 09/06/23 | 1 | Complaint, Page ID # 1-10 |
| 4/22/24 | 27 | Opinion Granting Defendant's Motion to Transfer, Page ID # 387-397 |
| 4/22/24 | 28 | Order Transferring Case to W.D. Tenn., Page ID # 398 |
| 07/03/24 | 48 | Notice of Defendant's Motion to Dismiss, Page ID # 52 |
| 07/03/24 | 48-1 | Defendant's Memorandum of Law in Support of Its Motion to Dismiss the Complaint, Page ID # 54-74 |
| 07/03/24 | 48-2 | Declaration of Brandon Folck, Page ID # 75-77 |
| 07/03/24 | 48-3 | Declaration of Michele McDermott, Page ID # 78-79 |
| 07/03/24 | 48-4 | Hub Trucking, Inc., Independent Contractor and Equipment Lease Agreement (Andujar), Page ID # 80-127 |
| 07/03/24 | 48-5 | Hub Trucking, Inc., Independent Contractor and Equipment Lease Agreement (Batista), Page ID # 128-177 |
| 7/26/24 | 51 | Plaintiff's Memorandum of Law in Opposition to Defendant's Motion to Dismiss, Page ID # 181-206 |
| 7/26/24 | 51-1 | Exhibit 1 Hub Group Form 10-K (2023), Page ID # 207-208 |
| 7/26/24 | 51-2 | Exhibit 2 Hub Group Locations, Page ID # 209-216 |
| 7/26/24 | 51-3 | Exhibit 3 Form 10-K (2006), Page ID # 217-219 |
| 7/26/24 | 51-4 | Exhibit 4 Form 10-K (2014), Page ID # 220-222 |
| 7/26/24 | 51-5 | Exhibit 5 "Comtrak to be renamed Hub Group Trucking", Page ID # 223-224 |

| 7/26/24 | 51-6 | Exhibit 6 About Hub Group, Page ID # 225-227 |
|---------|------|----------------------------------------------|
| 7/26/24 | 51-7 | Exhibit 7 Hub Group Breaks Ground of Second Building at Headquarters, Page ID # 228-230 |
| 7/26/24 | 51-8 | Exhibit 8 Jorge Andujar and Franklin Pena Batista 2023 1099 Forms, Page ID # 231-233 |
| 7/26/24 | 51-9 | Exhibit 9 Declarations of Jorge Andujar and Franklin Pena Batista, Page ID # 234-240 |
| 7/26/24 | 51-10 | Exhibit 10 Tennessee Labor and Workforce Development:   Employee or Independent Contractor?, Page ID # 241-244 |
| 7/26/24 | 51-11 | Exhibit 11 Tennessee  Adopts 20-Fact Test in Independent Contractor Analysis, Page ID # 245-248 |
| 7/26/24 | 51-12 | Exhibit 12 Report of N.J. Gov. Murphy's Task Force on Employee Misclassification, Page ID # 249-280 |
| 7/26/24 | 51-13 | Exhibit 13 renew Jersey AG Supports Stronger Test for Worker Misclassification, Page ID # 281-283 |
| 7/26/24 | 51-14 | Exhibit 14 Misclassification, the ABC test and Employee Status, Page ID # 284-309 |
| 7/26/24 | 51-15 | Exhibit 15 California Lawmakers Will Gag the Gig Economy With Assembly Bill 5, Page ID # 310-313 |
| 7/26/24 | 51-16 | Exhibit 16 State of New Jersey Executive Order No. 25, Page ID # 314-318 |
| 7/26/24 | 51-17 | Exhibit 17 State of New Jersey Executive Order No. 96, Page ID # 319-321 |
| 7/26/24 | 51-18 | Exhibit 18 N.J. Dept. of Labor and Workforce Development Article, Page ID # 322-325 |
| 7/26/24 | 51-19 | Exhibit 19 N.J. Labor Dept., USDOL Ink Agreement to Work Together to Protect Businesses and End Exploitation of Workers Through Misclassification, Page ID # 326-363 |
| 7/26/24 | 51-20 | Exhibit 20 Wage and Hour Compliance FAQs (For Workers), Page ID # 364-366 |
| 7/26/24 | 51-21 | Exhibit 21 Senate, No. 1790 State of NJ 218th Legislature, Page ID # 367-388 |
| 7/26/24 | 51-22 | Exhibit 22 Seyfarth New Jersey Passes Landmark Anti-Wage Theft Law, Page ID # 389-392 |
| 7/26/24 | 51-23 | Exhibit 23 Assembly, No. 5890 State of NJ, 219th Legislature, Page ID # 393-409 |

47

| 7/26/24 | 51-24 | Exhibit 24 Assembly, No. 5891 State of NJ, 219th Legislature, Page ID # 410-416 |
|---------|-------|-------------------------------------------------------------------------------|
| 7/26/24 | 51-25 | Exhibit 25 Assembly, No 5892 State of NJ, 219th Legislature, 417-432 |
| 7/26/24 | 51-26 | Exhibit 26 State of TN Public Chapter No. 337, Page ID # 433-444 |
| 8/16/2024 | 52 | Defendant's Reply Brief in Support of its Motion to Dismiss the Complaint, Page ID # 445-458 |
| 8/16/2024 | 52-1 | Declaration of Brandon Folck, Page ID # 459-461 |
| 8/16/2024 | 52-2 | Independent Contractor and Equipment Lease Agreement (Andujar), Page ID # 462-509 |
| 8/16/2024 | 52-3 | Independent Contractor and Equipment Lease Agreement (Batista), Page ID # 510-526 |
| 2/13/2025 | 58 | Order Granting Motion to Dismiss, Page ID # 533-542 |
| 2/14/2025 | 59 | Judgment, Page ID # 543 |
| 2/18/2025 | 60 | Plaintiff's Notice of Appeal, Page ID # 544-545 |

Dated: May 1, 2025

Respectfully Submitted,
Plaintiffs-Appellants,
By their attorneys,


*/s/ Harold Lichten*_____
Harold Lichten, Esq.
Matthew Thomson, Esq.
Lichten & Liss-Riordan, P.C.
729 Boylston Street, Suite 2000
Boston, MA 02116
Telephone: (617) 994-5800
hlichten@llrlaw.com
mthomson@llrlaw.com

Peter Winebrake, Esq.
Mark J. Gottesfeld, Esq.
Winebrake & Santillo, LLC
715 Twining Road, Suite 211
Dresher, PA 19025
Telephone: (215) 884-2491
pwinebrake@winebrakelaw.com
mgottesfeld@winebrakelaw.com

CERTIFICATE OF COMPLIANCE

The undersigned counsel for Plaintiffs-Appellants furnish the following in compliance with FRAP Rule 32(a)(7)(B):

I hereby certify that this Brief conforms to the rules contained in FRAP Rule 32(a)(7)(B). This brief was prepared in Times New Roman, using 14-point type in the body and footnotes, using Microsoft Word. The referenced word processing system indicates a total word count of 11,163 words, beginning at page "1," as authorized and determined under FRAP Rule 32(a)(7)(B).

Dated: May 1, 2025

*/s/ Harold Lichten*_____
Attorney for Plaintiffs-Appellants

CERTIFICATE OF SERVICE

I hereby certify that on May 1, 2025, the Brief of Plaintiffs-Appellants was filed with the Clerk of the Court for the United States Court of Appeals for the Sixth Circuit by using the appellate CM/ECF system. I certify that all participants in the case are registered CM/ECF users and that service will be accomplished by the appellate CM/ECF system.

*/s/ Harold Lichten*_____
Attorney for Plaintiffs-Appellants