# United States Court of Appeals

*for the*

# Sixth Circuit

Case No. 25-5130

JORGE ANDUJAR; FRANKLIN PENA BATISTA,
on behalf of themselves and all others similarly situated,

*Plaintiffs-Appellants,*

– v. –

HUB GROUP TRUCKING, INC.,

*Defendant-Appellee.*

APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE WESTERN
DISTRICT OF TENNESSEE AT MEMPHIS, NO. 2:24-CV-02296, THE HONORABLE
THOMAS L. PARKER, U.S. DISTRICT COURT JUDGE PRESIDING

## BRIEF FOR DEFENDANT-APPELLEE

ALLAN S. BLOOM
EDNA D. GUERRASIO
PROSKAUER ROSE LLP
*Attorneys for Defendant-Appellee*
Eleven Times Square
New York, New York 10036
(212) 969-3000

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

# Disclosure of Corporate Affiliations
# and Financial Interest

Sixth Circuit
Case Number: 25-5130 _____    Case Name: Andujar v. Hub Group Trucking, Inc. _____

Name of counsel:  Allan S. Bloom _____

Pursuant to 6th Cir. R. 26.1, Hub Group Trucking, Inc. _____
                              *Name of Party*

makes the following disclosure:

1.    Is said party a subsidiary or affiliate of a publicly owned corporation?  If Yes, list below the
      identity of the parent corporation or affiliate and the relationship between it and the named
      party:

Hub Group Trucking, Inc. is a wholly owned subsidiary of Hub City Terminals, Inc.  Hub City
Terminals, Inc. is a privately-held Delaware Corporation that does not offer or trade company
stock to the general public.  Hub City Terminals, Inc. is a wholly owned subsidiary of Hub
Group, Inc.  Hub Group, Inc. is also a Delaware Corporation.  Its stock is publicly traded on the
NASDAQ Stock Market under the ticker symbol HUBG.

2.    Is there a publicly owned corporation, not a party to the appeal, that has a financial interest
      in the outcome?  If yes, list the identity of such corporation and the nature of the financial
      interest:

No.

---

CERTIFICATE OF SERVICE

I certify that on _____ March 5, 2025 _____ the foregoing document was served on all
parties or their counsel of record through the CM/ECF system if they are registered users or, if they are not,
by placing a true and correct copy in the United States mail, postage prepaid, to their address of record.

s/ Allan S. Bloom _____

_____

_____

---

This statement is filed twice:  when the appeal is initially opened and later, in the principal briefs,
immediately preceding the table of contents.  See 6th Cir. R. 26.1 on page 2 of this form.

### 6th Cir. R. 26.1
## DISCLOSURE OF CORPORATE AFFILIATIONS
## AND FINANCIAL INTEREST

(a)  **Parties Required to Make Disclosure**.  With the exception of the United States government or agencies thereof or a state government or agencies or political subdivisions thereof, all parties and amici curiae to a civil or bankruptcy case, agency review proceeding, or original proceedings, and all corporate defendants in a criminal case shall file a corporate affiliate/financial interest disclosure statement.  A negative report is required except in the case of individual criminal defendants.

(b)  **Financial Interest to Be Disclosed**.

(1)  Whenever a corporation that is a party to an appeal, or which appears as amicus curiae, is a subsidiary or affiliate of any publicly owned corporation not named in the appeal, counsel for the corporation that is a party or amicus shall advise the clerk in the manner provided by subdivision (c) of this rule of the identity of the parent corporation or affiliate and the relationship between it and the corporation that is a party or amicus to the appeal.  A corporation shall be considered an affiliate of a publicly owned corporation for purposes of this rule if it controls, is controlled by, or is under common control with a publicly owned corporation.

(2)  Whenever, by reason of insurance, a franchise agreement, or indemnity agreement, a publicly owned corporation or its affiliate, not a party to the appeal, nor an amicus, has a substantial financial interest in the outcome of litigation, counsel for the party or amicus whose interest is aligned with that of the publicly owned corporation or its affiliate shall advise the clerk in the manner provided by subdivision (c) of this rule of the identity of the publicly owned corporation and the nature of its or its affiliate's substantial financial interest in the outcome of the litigation.

(c)  **Form and Time of Disclosure**.  The disclosure statement shall be made on a form provided by the clerk and filed with the brief of a party or amicus or upon filing a motion, response, petition, or answer in this Court, whichever first occurs.

# TABLE OF CONTENTS

Page

TABLE OF AUTHORITIES ......................................................................... ii

I.    ORAL ARGUMENT STATEMENT ....................................................1

II.   STATEMENT OF JURISDICTION ...................................................1

III.  STATEMENT OF ISSUES ..................................................................2

IV.   STATEMENT OF THE CASE .............................................................2

    A.   Factual Background.....................................................................2

    B.   Procedural History.......................................................................5

V.    SUMMARY OF THE ARGUMENT ....................................................7

VI.   ARGUMENT........................................................................................9

    a.   Standard of Review .....................................................................9

    b.   The District Court Properly Applied Tennessee's
       Choice-of-Law Rules to The Parties' Contractual
       Choice-of-Law Provision ............................................................9

       i.   The District Court Correctly Held That Tennessee's
          Choice-of-Law Rules Apply ...........................................9

       ii.  Appellants' Assertion That The Restatement Applies
          Here Is Incorrect.............................................................10

    c.   The District Court Correctly Held That Tennessee Has a
       Material Connection To The Transaction ...........................13

    d.   The District Court Correctly Held That Appellants Have Not
       Shown That New Jersey Has a Materially Greater Interest ...............18

    e.   The District Court Properly Dismissed Appellants' New
       Jersey Statutory Claims.........................................................25

    f.   The District Court Correctly Held That The Parties'
       Contracted-For Choice-of-Law Provision Is Enforceable
       Under Sixth Circuit Law ...........................................................26

VII.  CONCLUSION....................................................................................28

CERTIFICATE OF COMPLIANCE....................................................29

CERTIFICATE OF SERVICE .............................................................30

ADDENDUM ...........................................................................................31

# TABLE OF AUTHORITIES

**Page(s)**

**Cases:**

*Andujar v. Hub Grp. Trucking, Inc.*,
  Civ. Action No. 2:24-cv-02296 (TLP) (CGC), --- F.Supp.3d ---,
  2025 WL 817217 (W.D. Tenn. Feb. 13, 2025) ..............................................6, 11

*Andujar v. Hub Grp. Trucking, Inc.*,
  Civ. Action No. 23-16987 (MEF) (JSA),
  2024 WL 1715334 (D.N.J. Apr. 22, 2024)....................................................5, 18

*Atl. Marine Constr. Co. v. U.S. Dist. Ct. for W. Dist. of Tex.*,
  571 U.S. 49 (2013)................................................................................10

*Banek Inc. v. Yogurt Ventures U.S.A., Inc.*,
  6 F.3d 357 (6th Cir. 1993) ..................................................................23, 25, 26

*Bank of New York v. Janowick*,
  470 F.3d 264 (6th Cir. 2006) ......................................................................16, 17

*Blackwell v. Sky High Sports Nashville Operations, LLC*,
  523 S.W.3d 624 (Tenn. Ct. App. 2017)......................................................12, 16, 17

*Carrow v. FedEx Ground Package Sys., Inc.*,
  No. 16-3026, 2019 WL 7184548 (D.N.J. Dec. 26, 2019) .................................27

*Collins ex rel Herself v. Mary Kay, Inc.*,
  874 F.3d 176 (3d Cir. 2017) ..............................................................16

*Curtis 1000, Inc. v. Martin*,
  197 F. App'x 412 (6th Cir. 2006) ..........................................................10, 12

*EPAC Techs., Inc. v. HarperCollins Christian Publ'g, Inc.*,
  810 F. App'x 389 (6th Cir. 2020) ........................................................14

*First Fid. Cap. Mkts., Inc. v. Reliant Bank*,
  No. 3:17-cv-01080, 2020 WL 514577 (M.D. Tenn. Jan. 31, 2020)...................15

*Friendship Home Healthcare, Inc. v. Procura, LLC*,
  No. 3:09-0016, 2010 WL 500427 (M.D. Tenn. Feb. 5, 2010) .................... 14-15

*Goodwin Bros. Leasing, Inc. v. H & B Inc.*,
  597 S.W.2d 303 (Tenn. 1980) ..............................................................12, 14

*Grantham & Mann, Inc. v. Am. Safety Prods., Inc.*,
  831 F.2d 596 (6th Cir. 1987) ..............................................................25

*Hataway v. McKinley*,
  830 S.W.2d 53 (Tenn. 1992) ..............................................................12

*In re Air Crash Disaster*,
  86 F.3d 498 (6th Cir. 1996) ...............................................................10

*Johnson v. Diakon Logistics, Inc.*,
  44 F.4th 1048 (7th Cir. 2022) ............................................................27

*Johnson v. Metro. Gov't of Nashville & Davidson Cnty., Tenn.*,
  502 F. App'x 523 (6th Cir. 2012) ...................................................9, 26

*Johnson v. Ventra Grp., Inc.*,
  191 F.3d 732 (6th Cir. 1999) .............................................................23

*Klaxon Co. v. Stentor Elec. Mfg. Co.*,
  313 U.S. 487 (1941)............................................................................10

*Lubinski v. Hub Grp. Trucking, Inc.*,
  No. 2:14-cv-02843-JPM-dkv, 2015 WL 10732716
  (W.D. Tenn. Sept. 22, 2015), *aff'd*, 690 F. App'x 377 (6th Cir. 2017) ......*passim*

*Mill's Pride, Inc. v. Cont'l Ins. Co.*,
  300 F.3d 701 (6th Cir. 2002) .............................................................15

*Montgomery v. Wyeth*,
  580 F.3d 455 (6th Cir. 2009) .............................................................23

*Moses v. Bus. Card Express, Inc.*,
  929 F.2d 1131 (6th Cir. 1991) ...........................................................15

*Newberry v. Silverman*,
  789 F.3d 636 (6th Cir. 2015) ...............................................................9

*Performance Contracting Inc. v. DynaSteel Corp.*,
  750 F.3d 608 (6th Cir. 2014) .............................................................25

*Robles v. Comtrak Logistics, Inc.*,
  No. 15-02228, 2016 WL 11528831 (W.D. Tenn. July 19, 2016) ...............16, 17

*Ruiz v. Affinity Logistics Corp.*,
  667 F.3d 1318 (9th Cir. 2012) ...........................................................24

*Safety Specialty Ins. Co. v. Genesee Cnty. Bd. of Comm'rs*,
  53 F.4th 1014 (6th Cir. 2022) ...........................................................24

*Saginaw Cnty. v. STAT Emergency Med. Servs., Inc.*,
  946 F.3d 951 (6th Cir. 2020) .............................................................24

*Servpro Indus., Inc. v. Woloski*,
   No. 3:17-CV-01433, 2019 WL 3552516 (M.D. Tenn. Aug. 5, 2019),
   *aff'd*, No. 21-5685, 2022 WL 633844 (6th Cir. Mar. 4, 2022) .................... 25-26

*Spectrum Cubic, Inc. v. Grant Prods. de Mexico, S.A. de C.V.*,
   552 F. App'x 452 (6th Cir. 2014) ...................................................... 14

*Tavares v. S-L Distribution Co.*,
   No. 13-cv-1313, 2014 WL 12951783 (M.D. Pa. Jan. 14, 2014) ................. 24, 25

*Tele-Save Merch. Co. v. Consumers Distrib. Co.*,
   814 F.2d 1120 (6th Cir. 1987) ................................................. 23, 26, 27

*Tex. Inns, Inc. v. Prime Hosp. Corp.*,
   462 F.3d 666 (6th Cir. 2006) .................................................... 10, 12

*Yan Ming Marine Transp. Corp. v. Intermodal Cartage Co.*,
   685 F. Supp. 2d 771 (W.D. Tenn. 2010) .................................. 10, 11, 19

## Statutes and Other Authorities:

28 U.S.C. § 1332(d) ....................................................................... 1

28 U.S.C. § 1404(a) ....................................................................... 5

Fed. R. App. P. 32(a)(5) ................................................................ 29

Fed. R. App. P. 32(a)(6) ................................................................ 29

Fed. R. App. P. 32(a)(7)(B) ............................................................ 29

Fed. R. App. P. 32(f) .................................................................... 29

Fed. R. Civ. P. 12(b)(6) ......................................................... 1, 5, 6

Ohio Legislature amended § 1334.15(B) ............................................. 23

Ohio S.B. 196 (2011) ................................................................... 23

Tenn. Code. § 50-2-110(a)(2) ......................................................... 22

Tenn. Code Ann. § 50-7-207(b)(2)(B)(i)-(xx) ....................................... 22

The Bluebook, A Uniform System of Citation, 21st Ed. (2020) ................... 12

Restatement (Second) Conflict of Laws § 187(2) ........................ 7, 11, 12, 17

## I.    ORAL ARGUMENT STATEMENT

Defendant-Appellee Hub Group Trucking, Inc. ("Hub Group") requests that the Court hold oral argument on this matter to assist the Court in its assessment of whether the district court properly applied Tennessee's choice-of-law analysis and dismissed Plaintiff-Appellants' New Jersey wage and hour law claims.

## II.    STATEMENT OF JURISDICTION

Plaintiffs-Appellants Jorge Andujar ("Andujar") and Franklin Pena Batista ("Batista") (together, "Appellants") appeal from the Memorandum Decision and Order of the Honorable Thomas L. Parker, United States District Judge of the Western District of Tennessee, dated February 13, 2025 ("Order") (RE 58, Page ID # 533-542), and the Judgment entered thereon granting the motion to dismiss this action filed by Hub Group pursuant to Fed. R. Civ. P. 12(b)(6).  (Judgment, RE 59, Page ID # 543.)

The district court had subject matter jurisdiction pursuant to 28 U.S.C. § 1332(d) because complete diversity of citizenship exists between the parties. Appellants and members of the putative class are citizens of New Jersey and states different from that of Hub Group, which is incorporated in Delaware and headquartered in Illinois.  Appellants state that they anticipate approximately 100 members in the proposed class and allege damages on behalf of all class members exceeding $5 million.

### III.    <u>STATEMENT OF ISSUES</u>

The sole issue presented to the Court is whether the district court properly dismissed Appellants' complaint when it applied Tennessee's choice-of-law analysis and found that: (1) Appellee's significant business operations and the history of the parties' contractual dealings established a material connection to Tennessee; and (2) Appellants failed to show that New Jersey had a materially greater interest in worker misclassification than Tennessee, consistent with the Court's decision in *Lubinski v. Hub Group Trucking, Inc.*, 690 F. App'x 377 (6th Cir. 2017).  Having properly concluded that the parties' bargained-for contractual choice-of-law provision must be upheld, the district court properly dismissed Appellants' New Jersey wage and hour law claims as incognizable under Tennessee law.  This Court should affirm.

### IV.    <u>STATEMENT OF THE CASE</u>

#### A. <u>Factual Background</u>

Hub Group is a nationwide company involved in interstate commerce that maintains significant operations in Memphis, Tennessee. (Decl. of Brandon Folck, RE 52-1, Page ID # 459.)  While Hub Group is presently headquartered in Illinois, its predecessor, Comtrak Logistics ("Comtrak"), was headquartered in Memphis, Tennessee. (*Id.* at 460.)  Hub Group currently maintains more than 250 workers and managers at three facilities in Tennessee, including two truck terminals and a consolidation and fulfillment center.  (Decl. of Michele McDermott, RE 48-3, Page

2

ID # 79.)  Hub Group's significant operations in Memphis, Tennessee have made it one of the company's flagship facilities and a gateway market connecting operations on the eastern and western coasts.  (Decl. of Brandon Folck, RE 52-1, Page ID # 459-60.)

Appellants Andujar and Batista each provided services to Hub Group pursuant to a series of commercial agreements titled "Independent Contractor and Equipment Lease Agreements" (the "Agreements," and each, an "Agreement") that set forth the terms and conditions of their relationship with Hub Group. (Decl. of Brandon Folck, RE 52-1, Page ID # 460.)  The parties entered into a new Agreement every two to three years.  (*Id.*)

In the case of Appellants (and those they seek to represent here), the Agreements contain both forum selection and choice-of-law provisions.  In those provisions, the parties agreed that state or federal court sitting in Memphis, Tennessee is the judicial forum in which all disputes would be heard, and that Tennessee law would govern any claims asserted.  In relevant part the Agreements state:

> [T]his Agreement, including any and all claims or disputes arising out of, in connection with, or relating to this Agreement, or the transactions or relationship between the parties contemplated and established by this Agreement, shall be governed and interpreted by the laws of the State of Tennessee, without regard to the choice-of-law rules of that State or any other jurisdiction.

3

(Decl. of Michele McDermott, Exs. A & B, § 6.E, RE 48-4 and 48-5, Page ID # 95 & 143; Decl. of Brandon Folck, Exs. A & B, § 6.E, RE 52-2 and 52-3, Page ID # 475 & 523.)

Appellant Andujar performed work for Comtrak and then Hub Group over a ten-year period and entered into four Agreements with Hub Group, each containing Tennessee venue and choice-of-law provisions.  (Decl. of Brandon Folck, RE 52-1, Page ID # 460.)  Two of Andujar's Agreements were executed by Hub Group (or its predecessor Comtrak) in Memphis, Tennessee.  (*Id.*)

Appellant Batista owned and operated a limited liability company called Esther Trucking, LLC, which was comprised of a fleet of truck drivers that serviced the Agreements he entered into with Hub Group.  (Decl. of Brandon Folck, RE 52-1, Page ID # 461.)  The two Agreements Batista entered into with Hub Group contained the same Tennessee venue and choice-of-law provisions cited above.  (Decl. of Michele McDermott, Ex. B, § 6.E, RE 48-5, Page ID # 143; Decl. of Brandon Folck, Ex. B, § 6.E, RE 52-3, Page ID # 523.)    Both of Batista's Agreements were executed by Hub Group managers in Memphis, Tennessee, including Hub Group's Director of Independent Contractor Leasing.  (Decl. of Michele McDermott, Ex. B, RE 48-5, Page ID # 146; Decl. of Brandon Folck, Ex. B, RE 52-3, Page ID # 526.)  During the term of the contract with Hub Group, Appellant Batista represented to Hub Group that he resided in Long Pond,

Pennsylvania[1] and maintained New York and Pennsylvania (not New Jersey) commercial driver's licenses. (Decl. of Brandon Folck, RE 52-1, Page ID # 461.)

B. <u>Procedural History</u>

On September 6, 2023, Appellants commenced this litigation in the United States District Court for the District of New Jersey. (Compl., RE 1, Page ID # 1-10.) On December 18, 2023, Hub Group simultaneously filed a motion to transfer venue pursuant to 28 U.S.C. § 1404(a) (Motion to Transfer, RE 9, Page ID # 31-32) and a motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6) (Motion to Dismiss, RE 10, Page ID # 153-154.) The New Jersey district court granted the motion to transfer venue, finding that the forum selection clause in the Agreements was valid and applicable to the parties' dispute and that Appellants had failed to show that the circumstances were so "exceptional" or "unusual" such that the case should not be transferred due to public interest. *Andujar v. Hub Grp. Trucking, Inc.*, Civ. Action No. 23-16987 (MEF) (JSA), 2024 WL 1715334, at *6 (D.N.J. Apr. 22, 2024). The New Jersey court declined to rule upon Hub Group's motion to dismiss in light of the transfer of venue, noting that the "choice of law question . . . should be left for the court in the Western District of Tennessee to resolve." *Id.* at n.8.

---

[1] Notably, Long Pond Pennsylvania is also identified as Batista's residence in the district court complaint. (Compl., RE 1, Page ID # 1-10.)

Appellants did not appeal the New Jersey district court's ruling, and the case was transferred to the United States District Court for the Western District of Tennessee on May 8, 2024.  (Order, RE 28, Page ID # 398.)

On July 3, 2024, Hub Group filed a motion to dismiss for failure to state a claim under Fed. R. Civ. P. 12(b)(6) on the theory that under the Agreements' choice-of-Tennessee-law provision, Appellants' New Jersey statutory wage and hour claims are not cognizable. (Mem. of Law in Support of Motion to Dismiss, RE 48-1, Page ID # 54-74.)  On February 13, 2025, the Tennessee district court (Hon. Thomas L. Parker, U.S.D.J.) granted Hub Group's motion.  (Order, RE 58, Page ID # 533-542.) Judge Parker found that Hub Group had demonstrated a material connection to Tennessee through the significant business Hub Group conducts in Tennessee and the parties' contractual dealings.  Judge Parker further concluded that Appellants had failed to show that New Jersey had a "materially greater" interest in worker classification than Tennessee simply because Tennessee "weigh[ed] those interests differently."  *Andujar v. Hub Grp. Trucking, Inc.*, Civ. Action No. 2:24-cv-02296 (TLP) (CGC), --- F.Supp.3d ---, 2025 WL 817217, at *4 (W.D. Tenn. Feb. 13, 2025).

On February 19, 2025, Appellants filed a notice of appeal with this Court. (Notice of Appeal, RE 60, Page ID # 544-545.)

6

## V.     **SUMMARY OF THE ARGUMENT**

Hub Group comes before this Court to enforce the parties' agreed-upon choice-of-law provision, which requires application of Tennessee law based on Hub Group's longstanding and material connections to the state, Sixth Circuit precedent, and Appellants' repeated agreement that Tennessee law will govern.  This lawsuit arises from the commercial relationship between Hub Group and Appellants Andujar and Batista, pursuant to which Appellants provided services as independent owner-operators of trucks to deliver merchandise to and from Hub Group clients in the New Jersey metropolitan area and surrounding states.  The parties' relationships were governed by written agreements that contained Tennessee venue and choice-of-law provisions in light of Hub Group's historical, longstanding, and significant business presence in Tennessee.  More than ten years after execution of those agreements (during which time Appellants reaped the benefits of their bargained-for exchange), Appellants now seek to challenge the parties' selection of Tennessee law as the law that would govern all disputes arising under their Agreement.

In line with governing precedent, the district court properly applied Tennessee's choice-of-law analysis, which applies a four-prong test that differs materially from the Restatement (Second) Conflict of Laws § 187(2) test.  Applying Tennessee's analysis, the district court upheld the parties' bargained-for choice-of-law provision because Tennessee has a material connection to this dispute based

upon Hub Group's significant business presence in Tennessee and the parties' longstanding contractual relationship—which began when Hub Group's predecessor was headquartered in Tennessee and which the parties continually renewed thereafter, often in Tennessee. The district court also correctly held that Appellants have not—and cannot—show that New Jersey had a materially greater interest than Tennessee in the issue of worker classification (or, as Appellants would argue, misclassification).

Notably, the district court's ruling follows this Court's decision in *Lubinski v. Hub Group Trucking, Inc*., in which the Court applied the same Tennessee choice-of-law provision at issue here to dismiss Illinois wage and hour claims brought by truck operators who also believed they had been misclassified by Hub Group as independent contractors. On a strikingly similar set of facts, the Court held that Lubinski could not show that Illinois had a "materially greater interest" in the classification of employees as independent contractors (or vice versa) than would Tennessee. *Lubinski*, 690 F. App'x at 379. The Court also affirmed the district court's holding that "[t]he absence of a[n identical] Tennessee statute . . . is not alone sufficient to prove a 'significant difference' [as required to establish a violation of fundamental policy] because Plaintiff can still seek relief in Tennessee." *Lubinski v. Hub Grp. Trucking, Inc.*, No. 2:14-cv-02843-JPM-dkv, 2015 WL 10732716, at *4 (W.D. Tenn. Sept. 22, 2015), *aff'd*, 690 F. App'x 377 (6th Cir. 2017). The Sixth

8

Circuit in *Lubinski* also rejected the waiver argument Appellants raise here, holding that a choice-of-law provision is not a waiver of rights, because "choosing governing rights" (as Appellants have done here) "is different than waiving all rights."  690 F. App'x at 379.

Appellants' argument that Tennessee laws do not have extraterritorial effect is immaterial because Appellants did not plead any claim under Tennessee law.  *E.g.*, *Johnson v. Metro. Gov't of Nashville & Davidson Cnty., Tenn.*, 502 F. App'x 523, 541 (6th Cir. 2012) ("[T]he district court was limited, as are we, to the facts and legal claims as raised in the pleadings.").

The district court's decision should be affirmed.

**VI.    <u>ARGUMENT</u>**

**a.  <u>Standard of Review</u>**

A district court's choice-of-law analysis and conclusion is reviewed *de novo*. *Newberry v. Silverman*, 789 F.3d 636, 640 (6th Cir. 2015).

**b.  <u>The District Court Properly Applied Tennessee's Choice-of-Law Rules to The Parties' Contractual Choice-of-Law Provision.</u>**

**i.  The District Court Correctly Held That Tennessee's Choice-of-Law Rules Apply.**

The district court properly held, and Appellants concede (App. Br., RE 22, Page ID # 17), that the choice-of-law rules of the state in which a court sits (here,

Tennessee) apply in cases under diversity jurisdiction.[2]  (Order, RE 58, Page ID #

535); *In re Air Crash Disaster*, 86 F.3d 498, 540-41 (6th Cir. 1996) ("Choice-of-law

analysis in diversity actions is governed by the law of the state where the federal

court sits.") (citing *Klaxon Co. v. Stentor Elec. Mfg. Co.*, 313 U.S. 487, 497 (1941)).

> ### ii.  Appellants' Assertion That The Restatement Applies Here Is Incorrect.

The district court correctly recognized that Tennessee applies a four-prong

choice-of-law test (Order, RE 58, Page ID # 536) that has been repeatedly adopted

by the Sixth Circuit.  *E.g.*, *Se. Tex. Inns, Inc. v. Prime Hosp. Corp.*, 462 F.3d 666,

672 n.8 (6th Cir. 2006); *Lubinski*, 2015 WL 10732716, at *3 (citing *Yan Ming Marine*

*Transp. Corp. v. Intermodal Cartage Co.*, 685 F. Supp. 2d 771, 780 (W.D. Tenn.

2010)); *see also Curtis 1000, Inc. v. Martin*, 197 F. App'x 412, 418 (6th Cir. 2006).

Under the Tennessee law analysis, a contractual choice-of-law provision will be

enforced if: (1) it was executed in good faith; (2) the chosen jurisdiction bears a

material connection to the transaction; (3) the choice of law is reasonable and not

"merely a sham or subterfuge;" and (4) the law of the chosen jurisdiction is not

---

[2] Although Appellants commenced this action in the United States District Court for the District of New Jersey (Compl., RE 1, Page ID # 1-10), the law is clear that "the court in the contractually selected venue should not apply the law of the transferor venue to which the parties waived their right" because "it [would] be inequitable to allow the plaintiff to fasten its choice of substantive law to the venue transfer" and "encourage gamesmanship." *Atl. Marine Constr. Co. v. U.S. Dist. Ct. for W. Dist. of Tex.*, 571 U.S. 49, 65-66 (2013).  Appellants do not contest this point.

"contrary to a fundamental policy of a state which possesses a materially greater interest and whose law would otherwise govern." *Andujar,* 2025 WL 817217, at *2 (quoting *Yang Ming Marine Transp. Corp.*, 685 F. Supp. 2d at 780).  Importantly, ***Appellants recognized Tennessee's four-prong inquiry in its briefing to the district court and submitted arguments under that analysis***, but have now backtracked from that representation to argue in this Court that the Restatement (Second) controls. (Opp., RE 51, Page ID # 186.)  Appellants are mistaken in their newfound assertion that the Restatement (Second) test controls.[3]

Although Tennessee's analysis is derived from—and similar to—the Restatement (Second) analysis, it differs from the Restatement (Second) test[4] in two material respects: (i) the Tennessee test requires a "material connection" to Tennessee rather than the "substantial relationship" called for by the Restatement

---

[3] Contrary to Appellants' characterization, Appellee does not and has not "agreed" that Tennessee has adopted the Restatement (Second) choice-of-law analysis. Appellee argues here, as it did below, that Appellants misstate the test Tennessee courts apply in a choice-of-law analysis.  (Reply, RE 52, Page ID # 450-451.)

[4] Appellants ask the Court to adopt §187(2) of the Restatement (Second), and honor a choice-of-law selection unless either:

    (a) the chosen state has no substantial relationship to the parties or the transaction and there is no other reasonable basis for the parties' choice; or

    (b) application of the law of the chosen state would be contrary to a fundamental public policy of a state which has a materially greater interest than the chosen state in the determination of the particular issue, and which under the Rule of Section 188, would be the state of the applicable law in the absence of an effective choice of law between the parties.

(Second); and (ii) the Tennessee test lacks any reference to the phrase "particular issue" that appears in the Restatement (Second) test.

Appellants offer no case law that supports their argument that the Restatement (Second)—and not Tennessee's four-prong choice-of-law test—governs this contractual choice-of-law analysis. Appellants' reliance on *Hataway v. McKinley*, 830 S.W.2d 53 (Tenn. 1992) is misplaced because that case did not address a contractual choice-of-law provision, but rather whether the *lex loci delicti* doctrine applies to **tort cases** in Tennessee. Moreover, the courts in *Goodwin Bros. Leasing, Inc. v. H & B Inc.*, 597 S.W.2d 303, 307 (Tenn. 1980), *Blackwell v. Sky High Sports Nashville Operations, LLC*, 523 S.W.3d 624, 633 (Tenn. Ct. App. 2017), and *Lubinski,* 690 F. App'x at 379—all cited by Appellants—**adopted Tennessee's multi-prong analysis** (not the Restatement (Second)), and have been routinely cited for their discussion of the Tennessee multi-prong analysis that applies here. *E.g., Se. Tex. Inns, Inc.*, 462 F.3d at 672 n.8 (citing *Goodwin Bros. Leasing*, 597 S.W.2d at 306); *Curtis 1000, Inc.*, 197 F. App'x at 418 (same).[5]

---

[5] Notably, the court in *Goodwin Bros. Leasing* "recognized the settled law of Tennessee." 597 S.W.2d at 307. Although the court cited to the Restatement (Second) with a "*see*" signal (*id.* at n.2), that does not equate to the adoption of a different test than what is discussed in the decision, particularly given that a "*see*" signal is used to introduce an "authority [that] supports, but does not directly state, the proposition." The Bluebook, A Uniform System of Citation, at 4, 21st Ed. (2020), Rule B1.2.

12

Likewise, Appellants suggestion in footnote 20 that courts have inadvertently left the phrase "particular issue" out of the analysis has no basis in fact or law. (App. Br., RE 22, Page ID # 39-40 n.20.)  Indeed, the district court had no obligation to identify a "particular issue" under the applicable Tennessee multi-prong analysis. But even assuming, arguendo, that it did, the "particular issue" here is whether Appellants are independent contractors, not the outcome-determinative question proffered by Appellants of whether the Appellants would succeed under Tennessee or New Jersey wage laws *if* they were to overcome the preliminary hurdle of establishing that Hub Group misclassified them.  Thus, the district court adopted the appropriate framework for the choice-of-law analysis.

Finally, it must be noted that Appellants misrepresent in their brief (App. Br., RE 22, Page ID # 18-19) the Court's opinion in *Lubinski*, quoting Plaintiff-Appellant Lubinski's argument raised on appeal rather than the Court's holding, which as discussed below in Sections VI(d) and (f), compels dismissal of Appellants' claims. *See* 690 F. App'x at 379.

### c. <u>The District Court Correctly Held That Tennessee Has a Material Connection To The Transaction</u>.

The second prong[6] of Tennessee's choice-of-law analysis requires a material connection between the parties' transaction and Tennessee.   "[The material

---

[6] The district court correctly found that Appellants did not argue, and therefore conceded, that Hub Group's governing law provision is not a "sham or subterfuge"

connection factor] has usually been construed to mean that the [] state must have some direct and relevant connection with the transaction and that the choice of its law was not merely a sham or subterfuge." *Goodwin Bros. Leasing,* 597 S.W.2d at 306. The district court properly concluded that the material connection prong was satisfied because (1) Hub Group "acquired Comtrak, which was headquartered[7] in Tennessee"; (2) Hub Group "still conducts significant business operations in Tennessee," including three facilities that host more than 250 workers; and (3) Hub Group "executed most of the contracts at issue in Tennessee." (Order, RE 58, Page ID # 539.) *See EPAC Techs., Inc. v. HarperCollins Christian Publ'g, Inc.*, 810 F. App'x 389, 400 (6th Cir. 2020) (finding a "material connection" where one party negotiated and signed the agreement in the choice-of-law state); *see also Friendship Home Healthcare, Inc. v. Procura, LLC*, No. 3:09-0016, 2010 WL 500427, at *3-4

---

or made in bad faith. (Order, RE 58, Page ID # 536) (Opp., RE 51, Page ID # 187) (Appellants argued to the district court only that "the second and fourth factors of the test . . . are not met here.")). Accordingly, only the second and fourth prongs of the Tennessee choice-of-law test require discussion before this Court. *See, Spectrum Cubic, Inc. v. Grant Prods. de Mexico, S.A. de C.V.,* 552 F. App'x 452, 458 (6th Cir. 2014) (an argument not raised before the district court is waived on appeal) (citation omitted).

[7] Appellants belabor the point (based on non-precedential case law) that Hub Group cannot show a material connection because it is no longer headquartered in Tennessee. That argument is not determinative of the Court's analysis, as the district court correctly notes. The district court also found this argument lacking in merit because "the choice-of-law provision at issue has remained the same throughout Plaintiff Andujar's continuous relationship with Comtrak-turned-Hub Group." (Order, RE 58, Page ID # 537 n.3.)

14

(M.D. Tenn. Feb. 5, 2010) (defendant had a "material connection" with Utah because defendant had offices in Utah and had employees residing in Utah); *First Fid. Cap. Mkts., Inc. v. Reliant Bank,* No. 3:17-cv-01080, 2020 WL 514577, at *3 (M.D. Tenn. Jan. 31, 2020) ("material connection" existed where company was previously headquartered in choice-of-law state, despite current headquarters located in New Jersey).

Appellants cannot circumvent their obligation under the Agreements by relying upon Hub Group's "nationwide" company status.  As the district court correctly observed, the fact that Hub Group operates nationwide "does not negate its Tennessee connection."  (Order, RE 58, Page ID # 538.)  Hub Group's practice of selecting one state's law to govern its Independent Contractor and Equipment Lease Agreements is not "a bridge too far," as Appellants suggest, but rather commonplace. Multi-jurisdictional businesses routinely negotiate commercial contracts with the same choice-of-law provisions to promote and achieve consistency, uniformity, and predictability in their business practices. *See Mill's Pride, Inc. v. Cont'l Ins. Co*., 300 F.3d 701, 705 (6th Cir. 2002) (citation omitted).   Appellants' argument—that a company that conducts significant business in the chosen state must forfeit its choice-of-law provision and the predictability that provision brings simply because its operations have expanded to other states—is nonsensical.  *See Moses v. Bus. Card Express, Inc.*, 929 F.2d 1131, 1139 (6th Cir. 1991) (holding that courts must *"move*

cautiously when asked to hold contract clauses unenforceable on public policy grounds" because to do so would undermine the parties' bargained-for agreement); *Collins ex rel Herself v. Mary Kay, Inc.*, 874 F.3d 176, 183-84 (3d Cir. 2017) ("[The] rule honoring the parties' selected law serves the '[p]rime objectives of contract law . . . to protect the justified expectations of the parties and to make it possible for them to foretell with accuracy what will be their rights and liabilities under the contract.'") (citation omitted); *see also* Order, RE 58, Page ID # 537 n.3 ("The Court sees no reason that Hub Group must forfeit the Tennessee choice-of-law provision it and its predecessor relied on in business relationships that began when the company was still a resident of Tennessee.").

Without any relevant Sixth Circuit precedent to defeat the material connection established by the record, Appellants rely on two inapposite court decisions, *Robles v. Comtrak Logistics, Inc.,* No. 15-02228, 2016 WL 11528831 (W.D. Tenn. July 19, 2016) and *Blackwell*, 523 S.W.3d 624, as well as an easily distinguished decision from this Court, *Bank of New York v. Janowick*, 470 F.3d 264 (6th Cir. 2006). Each of these cases is unhelpful to Appellants for the reasons that follow.

*Robles* was decided in 2016, one year before this Circuit affirmed the district court's decision in *Lubinski*, 690 F. App'x 377. In any event, Judge Parker correctly held that *Robles* is inapposite to the facts presented here. The district court in *Robles* found no "demonstrated connection" between Comtrak's Tennessee operations and

16

Robles' contract.  Here, by contrast, Judge Parker noted that "Hub Group executed many contracts at issue in Tennessee, connecting the transactions with [Appellants] to the state," and that Hub Group maintains three facilities in Tennessee, one of which is a flagship facility that Hub Group inherited when it purchased Comtrak. (Order, RE 58, Page ID # 538.)

Appellants' reliance on *Blackwell* and *Bank of New York* is similarly misplaced.[8]  In *Blackwell*, the court found no material connection to California when only "[defendant's] *parent company* was founded in California over a decade ago and now operates several facilities there."  523 S.W.3d at 633 (emphasis added). Similarly, in *Bank of New York*, the Court did not apply New York law (the law chosen in the parties' agreement) because, *inter alia*, the parties conducted no "business [] in New York" whatsoever, which fact stands in sharp contrast to Hub Group's robust Tennessee presence.  470 F.3d at 270 n.3.[9]

The facts here are materially different from those before the courts in *Robles*, *Blackwell*, and *Bank of New York*.  Hub Group and its predecessor, Comtrak Logistics—with whom Appellant Andujar contracted numerous times—have

---

[8] Appellants also cite to decisions from courts in Texas, Iowa, and Michigan that do not address the Tennessee choice-of-law test, and therefore are of no moment on this appeal.

[9] In *Bank of New York*, the Sixth Circuit applied the Restatement (Second) of Conflict Laws under Kentucky's choice-of-law analysis.

17

maintained significant operations in Memphis, Tennessee for the entirety of Appellants' contracting periods. Those operations include its headquarters and then one of the Company's flagship facilities, consisting of two terminals and a consolidation and fulfillment center that connect operations on the eastern and western coasts, and which host more than 250 workers. (Decl. of Brandon Folck, RE 52-1, Page ID # 459; Decl. of Michele McDermott, RE 48-3, Page ID # 79.) Appellant Batista's two Agreements were signed by Hub Group managers, including its Director of Independent Contractor Leasing, in Memphis, Tennessee, while two of Appellant Andujar's four Agreements were executed in Memphis, one as recently as 2019. [10] (Decl. of Michele McDermott, Ex. B, RE 48-5, Page ID # 146; Decl. of Brandon Folck, Ex. B, RE 52-3, Page ID # 526; *id.*, Ex. A, RE 52-2, Page ID # 478.)

### d. **The District Court Correctly Held That Appellants Have Not Shown That New Jersey Has a Materially Greater Interest.**

The fourth prong of Tennessee's choice-of-law analysis provides that a contractual choice-of-law provision will be honored when the chosen law is not

---

[10] While not binding on this court or determinative of the issue, we note that the New Jersey district court has already determined that Tennessee was the proper venue for this litigation "based on Defendant's activities in Tennessee." *Andujar*, 2024 WL 1715334, at *3 n.3. The New Jersey district court also noted in its decision that the parties were responsible for carefully reading the terms of the agreements they sign, which, in this case, contained an unambiguous "**CONTROLLING LAW**" provision that explicitly states that the parties agree that Tennessee law will govern all disputes. The New Jersey district court further noted that Appellants "do not actually represent that they were unaware of the provision at the time they signed the Agreements" and that the provision was "clearly communicated." *Id.* at *4-5.

"contrary to a fundamental policy of a state which possesses a materially greater interest and whose law would otherwise govern." *Yang Ming Marine Transp. Corp.*, 685 F. Supp. 2d at 780 (citation and quotation marks omitted). The Court's decision in *Lubinski*, 690 F. App'x 377, coupled with Appellants' inability to show that New Jersey has a materially greater interest in worker classification or that Tennessee law is contrary to a fundamental New Jersey public policy, is determinative of this appeal.

This case is on all fours with the Court's decision in *Lubinski*. In *Lubinski*, an Illinois-based driver commenced a lawsuit in Illinois alleging that Hub Group misclassified him and other drivers as independent contractors and violated the Illinois Wage Payment and Collection Act ("IWPCA") by not compensating them as employees and by making purportedly unlawful deductions from their pay. *Id.* at 378. As here, the parties' contract contained a Tennessee choice-of-law provision and a forum-selection clause that resulted in the action being transferred to the Western District of Tennessee. *Id.*

In *Lubinski*, both the district court and (on appeal) this Court applied Tennessee's four-prong choice-of-law analysis in evaluating the plaintiff's claims.[11] Specifically, the district court found, *inter alia*, that: "(1) Tennessee law controlled

---

[11] The plaintiff in *Lubinski* did not dispute that the choice-of-law provision was executed in good faith or that Tennessee had a material connection to the transaction. *Id.*

and, under Tennessee law, the driver could not state a claim for violations of the IWPCA, an Illinois law"; and "(2) the contract's choice-of-law provision was ***not*** equivalent to an unenforceable waiver of Lubinski's rights."[12]  2015 WL 10732716, at *3.  This Court affirmed those findings.  690 F. App'x at 378 (emphasis added) (*see supra* VI(f)).

In consideration of the fourth prong of the Tennessee choice-of-law analysis, both the district court in *Lubinski* and this Court rejected the driver's argument that (a) Illinois had a "materially greater interest" than Tennessee in what the driver framed as "the issue of illegal wage deductions" and (b) that application of Tennessee law was contrary to the public policy of Illinois (whose law would apply but for the parties' contractual choice-of-law).  2015 WL 10732716, at *3.  In reaching this conclusion, this Court made clear that the relevant interest analysis concerned ***worker classification*** and that the driver "offer[ed] nothing of substance to support his claim that Illinois has a 'materially greater interest' in the classification of employees as independent contractors (or vice versa) than would Tennessee."  690 F. App'x at 379.

---

[12] In response to Lubinski's attempt to void the entire Agreement, the district court held that the contract was enforceable because "Lubinski had not claimed unenforceability of the contract in his complaint, but, even if he had, Lubinski could not show that the contract violated public policy."  690 F. App'x at 378.  Here, Appellants  do not argue that the entire Agreement is unenforceable.

Further, as the district court in *Lubinski* noted, to show that the chosen state's law violates the fundamental policy of another state, the plaintiff must show that there are "significant differences" in the application of the law of the two states. 2015 WL 10732716, at *4. However, "the absence of a Tennessee statute identical to the IWPCA is not alone sufficient to prove a 'significant difference'" and while the driver would not have a claim for IWPCA violations, he could still seek relief in Tennessee under the common law unjust enrichment theory and he could also raise claims under the federal Fair Labor Standards Act. *Id.* at *4. Notably, it was of no import that the plaintiff could not succeed under an unjust enrichment theory; as the district court noted, the plaintiff was barred from such recovery because there was a valid contract between the parties. *Id.*

Here, the same logic and law discussed in *Lubinski* compels dismissal of Appellants' claims, and Appellants offer no legitimate basis to depart from this Court's binding precedent. Indeed, the choice-of-law provision at issue here, as in *Lubinski*, provides that "all claims or disputes . . . shall be governed and interpreted by the laws of the State of Tennessee." (Decl. of Michele McDermott, Exs. A & B, § 6.E, RE 48-4 and 48-5, Page ID # 95 & 143; Decl. of Brandon Folck, Exs. A & B, § 6.E, RE 52-2 and 52-3, Page ID # 475 & 523.) As the Court held in *Lubinski*, Tennessee's four-prong conflict-of-law analysis controls.

With respect to the fourth prong—"materially greater interest"—Appellants repeat the exact same arguments that the Court rejected in *Lubinski* and urge the Court to ignore controlling case law solely because *Lubinski* involved a claim under Illinois law instead of New Jersey law. This argument is without merit. Appellants have not and cannot establish that New Jersey has a materially greater interest in worker classification than Tennessee.

Appellants dedicate many pages of their brief arguing that worker classification is an important public policy in New Jersey. That argument has never been in dispute. As the district court pointed out, however, "[j]ust because New Jersey's approach to paying workers and respecting parties' freedom to contract is more worker-friendly than Tennessee's does not mean its interests are 'materially greater' than Tennessee's interests in addressing these same policy considerations." (Order, RE 58, Page ID # 540-41.) Indeed, Appellants concede—as they must— that Tennessee has *its own interest* in worker classification and has adopted an independent contractor test that considers twenty factors.[13] (App. Br., RE 22, Page ID # 27 (citing Tenn. Code Ann. § 50-7-207(b)(2)(B)(i)-(xx))). That New Jersey may have wage laws that are more favorable to Appellants (as Illinois law was in *Lubinski*) or that would compel a different result than the one reached below bears

---

[13] Appellants also concede that Tennessee has a statute addressing unlawful wage deductions. (App. Br., RE 22, Page ID # 28 (citing Tenn. Code. § 50-2-110(a)(2)).

no weight in this analysis and would render the choice-of-law provision that Appellants repeatedly agreed to meaningless. *See Tele-Save Merch. Co. v. Consumers Distrib. Co.*, 814 F.2d 1120, 1123 (6th Cir. 1987) ("It is not sufficient for [plaintiff] to argue nor would we hold that Ohio law should be applied merely because a different result would be reached under [the parties' chosen] law.") (citation omitted);[14] *Johnson v. Ventra Grp., Inc.*, 191 F.3d 732, 740 (6th Cir. 1999) ("If the situation were otherwise, and foreign law could automatically be ignored whenever it differed from the law of the forum state, then the entire body of law relating to conflicts would be rendered meaningless."); *Montgomery v. Wyeth,* 580 F.3d 455, 462 (6th Cir. 2009) ("Tennessee's choice-of-law analysis does not turn on whether a plaintiff has a viable claim in one state but not another"); *Banek Inc. v. Yogurt Ventures U.S.A., Inc.*, 6 F.3d 357, 363 (6th Cir. 1993) ("It is not sufficient for plaintiff to simply assert that Michigan law should apply 'merely because a different result would be reached under' Georgia law.") (citation omitted).

Nor can Appellants demonstrate a "violation of public policy" by showing a significant difference in the application of the laws of the two states. Although Appellants cannot seek redress under New Jersey statutory law (similar to the

---

[14] After this Court rendered its decision in *Tele-Save Merch*, the Ohio Legislature amended Section 1334.15(B) to specifically provide that a "choice of law provision that deprives a purchaser who is an Ohio resident of the benefit of those sections is contrary to public policy and is void and unenforceable." *See* Ohio S.B. 196 (2011) (adopted June 26, 2012). ***New Jersey has not enacted a similar provision.***

plaintiff in *Lubinski*, who had no claim under Illinois law), they may seek recourse by alleging claims under Tennessee common law and the FLSA.[15]   Whether Appellants would be covered by the FLSA, succeed on an FLSA claim, or be precluded from succeeding on such a claim by the Motor Carrier Exemption are merits questions that are of no moment on this appeal, and that would require determinations of facts that have not yet been litigated and questions of law not before the Court.  *See Lubinski*, 690 F. App'x at 379-80 ("[T]he district court was limited, as are we, to the facts and legal claims as raised in the pleadings.") (citation omitted); *Safety Specialty Ins. Co. v. Genesee Cnty. Bd. of Comm'rs*, 53 F.4th 1014, 1020 (6th Cir. 2022) (courts cannot render "judgments on theoretical disputes that may or may not materialize") (citing *Saginaw Cnty. v. STAT Emergency Med. Servs., Inc.*, 946 F.3d 951, 954 (6th Cir. 2020)).

Appellants' argument that the Court should abandon *Lubinski* in favor of two out-of-circuit opinions—*Ruiz v. Affinity Logistics Corp.*, 667 F.3d 1318 (9th Cir. 2012), and *Tavares v. S-L Distribution Co.*, No. 13-cv-1313, 2014 WL 12951783, at *7 (M.D. Pa. Jan. 14, 2014)—ignores principles of stare decisis.  First, both the Ninth Circuit in *Ruiz* and the District Court for the Middle District of Pennsylvania in

---

[15] Contrary to Appellants' assertion, the district court did not find that Tennessee law violates New Jersey law, but merely "assume[d], without deciding, that New Jersey's worker classification system is a fundamental public policy of the state and that Tennessee law violates it."  (Order, RE 58, Page ID # 540.)

*Tavares* applied the Restatement (Second) Conflict of Laws test in its choice-of-law analysis, which—as explained above—differs materially from Tennessee's four-prong analysis.   Second, both *Ruiz* and *Tavares* were decided before the Court's decision in *Lubinski*.   Under *Lubinski*, the district court's opinion should be affirmed.

### e.  <u>The District Court Properly Dismissed Appellants' New Jersey Statutory Claims.</u>

Appellants do not challenge the district court's holding that their New Jersey statutory claims cannot lie if Tennessee law governs.   Indeed, it is axiomatic that a state law statutory claim is only cognizable under the laws of the state from which it was born. *Grantham & Mann, Inc. v. Am. Safety Prods., Inc.*, 831 F.2d 596, 607 (6th Cir. 1987) (where Tennessee law applies, a plaintiff may not bring a statutory claim under the laws of another state).   Because Tennessee law governs here, the district court properly dismissed Appellants' New Jersey statutory claims.   (Order, RE 58, Page ID # 542); *see Lubinski*, 690 F. App'x 377 (affirming dismissal of Illinois Wage Payment and Collection Act claim in light of the parties' Tennessee choice-of-law agreement); *Banek Inc.*, 6 F.3d 357 (upholding ruling that enforced parties' chosen state of Georgia's laws and dismissed plaintiff's claims under Michigan law); *Performance Contracting Inc. v. DynaSteel Corp.*, 750 F.3d 608, 617 (6th Cir. 2014) (upholding ruling that enforced Tennessee choice-of-law provision and dismissed Michigan statutory claims); *Servpro Indus., Inc. v. Woloski*, No. 3:17-CV-01433, 2019 WL 3552516, at *4 (M.D. Tenn. Aug. 5, 2019), *aff'd*, No. 21-5685, 2022 WL

25

633844 (6th Cir. Mar. 4, 2022) (affirming dismissal of counterclaims brought under California law "because the . . . Tennessee choice-of-law clause [was] enforceable").

Appellants' lengthy discussion of the extraterritorial application of *Tennessee law* is irrelevant because Appellants have not asserted any claims under Tennessee law; the question is therefore not before the Court.  *Johnson*, 502 F. App'x at 541 ("[T]he district court was limited, as are we, to the . . . legal claims as raised in the pleadings.").  The sole question before the Court is whether the district court correctly applied the parties' choice-of-law provision, and this should be answered in the affirmative.

### f.  The District Court Correctly Held That The Parties' Contracted-For Choice-of-Law Provision Is Enforceable Under Sixth Circuit Law.

Finally, the district court properly applied ***this Circuit's*** law to reject Appellants' argument that the parties' choice-of-law clause is an unenforceable waiver of an individual's statutory rights.  The Court has held that a choice-of-law provision making one state's law applicable is neither void nor a "waiver" of rights and protections under another state's non-waivable law.  *See Banek, Inc.*, 6 F.3d at 359 ("Providing that waivers and releases are void is not equivalent to voiding choice of law provisions."); *Tele-Save Merch. Co.*, 814 F.2d at 1122-23 (Ohio law voiding any waiver of the Ohio Business Opportunity Plans Act did not void choice-of-law provision).  Once again, *Lubinski* provides on-point precedent.

26

In *Lubinski*, the Court affirmed the district court's holding that the parties' choice-of-law provision is ***not*** a waiver of rights under Illinois statutory law because "[c]hoosing governing rights is different than waiving all rights." 690 F. App'x at 379. As the Court explained, the driver "did not waive his rights under the IWPCA because, under the choice of law provision to which he agreed, he elected to have his rights be defined and governed by Tennessee law." *Id.* For this reason, "[n]either Sixth Circuit case law nor Illinois statutory or case law supports [plaintiff]'s theory" of waiver. *Id.*; *see also Lubinski*, 2015 WL 10732716, at *4 ("The Sixth Circuit has also rejected the argument that an explicit non-waiver provision in a statute of one state necessarily means that the application of any other state's law would be against a fundamental public policy of the other state.") (citing *Tele-Save Merch. Co.*, 814 F.2d at 1122-23).

Appellants cite no authoritative case law in support of their argument. Rather, they urge the Court to depart from established Sixth Circuit legal precedent and adopt the findings of a single Seventh Circuit decision, *Johnson v. Diakon Logistics, Inc.*, 44 F.4th 1048 (7th Cir. 2022), that is not binding on this Court. Appellants also cite a non-binding New Jersey district court decision, *Carrow v. FedEx Ground Package Sys., Inc.*, No. 16-3026, 2019 WL 7184548 (D.N.J. Dec. 26, 2019), that has no bearing on this issue as it did not involve any choice-of-law analysis but rather addressed whether the sham incorporation of employees prevented class

certification—concerns that are not present here. Accordingly, the district court correctly held that the conflicts-of-law provision is enforceable under Sixth Circuit law.

**VII.   <u>CONCLUSION</u>**

For the reasons stated herein, Appellee Hub Group respectfully requests that the Court affirm the decision of the district court and dismiss Appellants' New Jersey wage and hour claims.

Respectfully submitted,

<u>/s/ Allan S. Bloom</u>
Allan S. Bloom
Proskauer Rose LLP
Attorneys for Defendant-Appellee
Eleven Times Square
New York, New York 10036
(212) 969-3000

28

## CERTIFICATE OF COMPLIANCE

This document complies with the type-volume limit of Fed. R. App. P. 32(a)(7)(B) because, excluding the parts of the document exempted by Fed. R. App. P. 32(f), contains 6,781 words. This document complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type-style requirements of Fed. R. App. P. 32(a)(6) because this document has been prepared in a proportionally spaced typeface using Microsoft Word 2016 in Times New Roman 14-point font.

Dated: May 23, 2025

/s/ Allan S. Bloom
Allan S. Bloom

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that on May 23, 2025, an electronic copy of the Brief of Defendant-Appellee was filed with the Clerk of the Court for the United States Court of Appeals for the Sixth Circuit by using the CM/ECF system. The undersigned also certifies that all participants are registered CM/ECF users and will be served via the CM/ECF system.

Dated: May 23, 2025

/s/ Allan S. Bloom
Allan S. Bloom

**ADDENDUM**

**DESIGNATION OF RELEVANT DISTRICT COURT DOCUMENTS**

| Record No. | Document | Page ID # |
|:---:|:---|:---:|
| RE 1 | Complaint (D.N.J.) | 1 - 10 |
| RE 9 | Notice of Motion to Transfer Venue (D.N.J.) | 31 - 32 |
| RE 9-1 | Defendant's Memorandum of Law in support of Its Motion to Transfer Venue (D.N.J.) | 33 - 48 |
| RE 10 | Notice of Motion to Dismiss (D.N.J.) | 153 - 154 |
| RE 10-1 | Defendant's Memorandum of Law in support of Its Motion to Dismiss the Complaint (D.N.J.) | 155 - 172 |
| RE 28 | Order Granting Motion to Transfer Venue (D.N.J.) | 398 |
| RE 48 | Notice of Motion to Dismiss (W.D. Tenn.) | 52 - 53 |
| RE 48-1 | Defendant's Memorandum of Law in support of Its Motion to Dismiss the Complaint (W.D. Tenn.) | 54 - 74 |
| RE 48-3 | Declaration of Michele McDermott (W.D. Tenn.) | 78 - 79 |
| RE 48-4 | Exhibit A: Hub Group Trucking, Inc. Independent Contractor and Equipment Lease Agreement (Andujar) | 80 - 127 |
| RE 48-5 | Exhibit B: Hub Group Trucking, Inc. Independent Contractor and Equipment Lease Agreement (Batista) | 128 - 177 |
| RE 51 | Plaintiffs' Memorandum of Law in Opposition to Defendant's Motion to Dismiss (W.D. Tenn.) | 181 - 206 |
| RE 52 | Defendant's Reply Brief in support of Its Motion to Dismiss the Complaint (W.D. Tenn.) | 445 - 458 |
| RE 52-1 | Declaration of Brandon Folck (W.D. Tenn.) | 459 - 461 |
| RE 58 | Order Granting Motion to Dismiss (W.D. Tenn.) | 533 - 542 |

| RE 59 | Judgment (W.D. Tenn.) | 543 |
|-------|------------------------|-----|
| RE 60 | Notice of Appeal (W.D. Tenn.) | 544 - 545 |