# No. 25-5130

IN THE

# United States Court of Appeals for the Sixth Circuit
_____

JORGE ANDUJAR AND FRANKLIN PENA BATISTA
PLAINTIFFS - APPELLANTS

V.

HUB GROUP TRUCKING, INC.
DEFENDANT - APPELLEE.
_____

On Appeal from the United States District Court
For the Western District of Tennessee
Case No. 2:24-cv-02296-TLP-cgc
_____

**REPLY BRIEF OF PLAINTIFFS-APPELLANTS**
_____

Harold Lichten, Esq.
Matthew Thomson, Esq.
Lichten & Liss-Riordan, P.C.
729 Boylston St., Ste. 2000
Boston, MA 02116
Telephone: (617) 994-5800
hlichten@llrlaw.com
mthomson@llrlaw.com

Peter Winebrake, Esq.
Mark Gottesfeld, Esq.
Winebrake & Santillo, LLC
715 Twining Road, Suite 211
Dresher, PA 19025
Telephone: (215) 884-2491
pwinebrake@winebrakelaw.com
mgottesfeld@winebrakelaw.com

*Counsel for Plaintiffs-Appellants*

i

## TABLE OF CONTENTS

I.      INTRODUCTION ............................................................................1

II.     TENNESSEE HAS NO MATERIAL CONNECTION TO THIS CASE ......4

III.    UNDER SECTION 187(2) OF THE RESTATEMENT – OR ANY
        CONSTRUCTION OF TENNESSEE'S "CHOICE OF LAW" TEST – HUB
        GROUP'S CHOICE OF LAW CLAUSE IS UNENFORCEABLE
        BECAUSE NEW JERSEY HAS A MATERIALLY GREATER INTEREST
        IN THIS LITIGATION ..................................................................11

        A.      Tennessee Has Adopted Section 187(2) of the Restatement ..............11

        B.      Even if Tennessee Courts Have Modified the Section 187(2) Analysis
                as Hub Group Now Suggest, the Choice of Law Clause is
                Unenforceable ..................................................................14

IV.     ALTERNATIVELY, THE CHOICE OF LAW CLAUSE IS
        UNENFORCEABLE UNDER THE REASONING OF THE SEVENTH
        CIRCUIT IN *DIAKON* AND BECAUSE TENNESSEE'S WAGE LAWS
        DO NOT HAVE EXTRATERRITORIAL EFFECT ....................................19

V.      CONCLUSION..............................................................................25

# TABLE OF AUTHORITIES

## Cases

*Adler v. Gruma Corp.*,
  No. 23-3177, -- F.4th --, 2025 WL 1119925 (3d Cir. Apr. 16, 2025) ................17

*Carroll v. CMH Homes, Inc.*,
  2013 WL 2431432 (E.D. Tenn. June 4, 2013) ....................................................15

*Carrow v. FedEx Ground Package Sys., Inc.*,
  2019 WL 7184548 (D.N.J. Dec. 26, 2019) .........................................................20

*Delphi Automotive v Absmeier*,
  167 F. Supp.3d 868 (E.D. Mich 2016) ...............................................................9

*EPAC Techs., Inc. v. HarperCollins Christian Publ'g, Inc.*,
  810 F. App'x 389 (6th Cir. 2020) .......................................................................10

*First Fid. Cap. Markets, Inc. v. Reliant Bank*,
  2020 WL 514577 (M.D. Tenn. Jan. 31, 2020) ...................................................10

*First Response, Inc. v. TMC Services, Inc.*,
  2013 WL 5434712 (M.D. Tenn. Sep. 27, 2013). ...............................................13

*Goodwin Bros. Leasing, Inc. v. H & B Inc.,*
  597 S.W.2d 303 (Tenn.1980)............................................................ 4, 11, 13, 14

*Harris v. Vision Energy, LLC*,
  250 N.E.3d 208 (Ohio Ct. App. 2024).................................................... 22, 23, 24

*Hataway v. McKinley*,
  830 S.W. 2d 53 (Tenn. 1992).............................................................................12

*Home Healthcare, Inc. v. Procura, LLC*, 2010 WL 500427 (M.D. Tenn. Feb. 5,
  2010) ..................................................................................................................11

*Lubinski v. Hub Group Trucking, Inc.*, 690 F. App'x 377 (6th Cir. 2017). ..... 17, 25

*Lupian v. Joseph Cory Holdings,*
  *LLC*, 240 F. Supp. 3d 309 (D.N.J. 2017)...........................................................21

*Melia v. Zenhire, Inc.*,
  967 N.E.2d 580 (Mass. 2012) ................................................................... 23, 24

*Muhammad v. Deutsche Bank National Trust Co.*,
  No. 21-6243, 2023 WL 3067756 (6th Cir. Apr. 25, 2023)..............................9, 12

*Ortiz v. Goya Foods, Inc.*,
  2020 WL 1650577 (D.N.J. Apr. 3, 2020) ...................................................... 21, 24

*Panos v. Timco Engine Ctr., Inc.,*
  197 N.C. App. 510 S.E.2d 868 74 (N.C. Ct. App. 2009) ...................................24

*Permobil, Inc. v. Westphal*,
  2024 WL 993293 (M.D. Tenn. March 7, 2024) ..................................................12

Robles v. Comtrak Logistics, Inc.,
  No. 15-02228, 2016 WL 11528831 (W.D. Tenn. July 19, 2016) ....................4, 7

*Ruiz v. Affinity Logistics Corp.*,
  667 F.3d 1318 (9th Cir. 2012) ............................................................................23

*Sheets v. Moore,*
  97 F.3d 164 (6th Cir.1996) .................................................................................17

*Stryker Sales Corp. v Siroonian*,
   2017 WL 11681453 (W.D. Mich. Mar. 6, 2017).................................................9

*Walker v. Amvac Chemical Corp.*,
  2018 U.S. Dist. LEXIS 239123 (E.D. Tenn. Mar. 21, 2018) ............................11

*Wirtgen Am., Inc. v. Hayden-Murphy Equip. Co.*,
  2023 WL 123499 (M.D. Tenn. Jan. 6, 2023) .....................................................15

*Wright v. Freedom Mortg. Corp.*,
  2009 WL 10671337 (S.D. Cal. May 26, 2009) ..................................................24

**Statutes and Treatises**

7 Colo. Code Regs. 1103-1 at § 5.1 .......................................................................3

Cal. Labor Code § 2802 .........................................................................................3

Conn. Gen. Stat. § 31-71e .....................................................................................3

Haw. Rev. Stat. Ann. § 387-2(a).............................................................................3

Restatement (Second) of Conflict of Laws § 187...................................................13

Restatement (Second) of Conflict of Laws § 187(2) ...................................... passim

Restatement (Second) of Conflict of Laws § 6 ..................................................13

Restatement (Second) of Conflict of Laws § 145 ..............................................13

Restatement (Second) of Conflict of Laws § 146 ..............................................13

Restatement (Second) of Conflict of Laws § 175 ..............................................13

 Tenn. Code. 50-2-110(a)(2) ..........................................................................3

**Other Authorities**

Katherine Florey, "Substance-Targeted Choice-of-Law Clauses,"
106 Va. L. Rev. 1107, 1113 (2020) ................................................2, 27

*Litigating Overtime and Minimum Wage Claims under State Statutes*,
188 Am. Jur. Trials 423 (2025).............................................................2

## I.    INTRODUCTION

Plaintiffs are New Jersey residents who worked for Hub Group Trucking, Inc. ("Hub Group") out of its New Jersey terminal. Hub Group has purported to exempt itself from the New Jersey wage laws by requiring Plaintiffs to sign a contract designating the law of Tennessee to apply. Hub Group takes this position even though it is neither headquartered nor incorporated in Tennessee, and its only connections to the State are that it happens to employ a small fraction of its workforce there and in 2007 it acquired the assets of a corporation that was previously located in Tennessee.

The district court below dismissed Plaintiffs' claims under the New Jersey wage statutes, which are among the most protective in the nation. Plaintiffs have appealed. In response, Hub Group makes two primary arguments which, if accepted, would allow it and most other nationwide companies to exempt themselves from the wage laws of the states in which their workers live and work. First, Hub Group asserts that it can select the law of any state where it maintains "significant business operations" and require all of its employees nationwide to agree to be subject to that one state's law even if that state has no connection to the workers involved. Second, Hub Group asserts that even if applying that chosen state's law would be repugnant to a fundamental public policy of the state where the workers actually work and live, this does not constitute grounds for

1

invalidating the choice-of-law clause, because all states have an equal interest in how workers are treated and classified. If this viewpoint is correct, then the district court has created a gaping loophole in this country's basic worker protection laws, which have traditionally been enshrined through state legislation. *See generally* Litigating Overtime and Minimum Wage Claims under State Statutes, 188 Am. Jur. Trials 423 (2025) ("…[M]inimum wage mandates existed for more than two decades before [the FLSA's] enactment in 1938, and were in fact a creation of state legislatures…."). The result would be the unprecedented erosion of a state's ability to collect payroll taxes, ensure fair competition, enforce worker's compensation and unemployment insurance programs, and to act as *parens patriae* with respect to the workers and employees within its borders.

And this is no exaggeration. Employers of millions of workers now require "choice of law" clauses in the onboarding documents they make their employees sign.[1] And while many states by statute provide protections against wage theft,

---

[1] There is growing popularity of choice-of-law clauses in employment contracts. *See generally* Katherine Florey, "Substance-Targeted Choice-of-Law Clauses," 106 Va. L. Rev. 1107, 1113 (2020).

misclassification, and wage deductions,[2] a good number – including Tennessee[3] – do not. Moreover, although the FLSA provides a minimum wage and overtime protections for some workers, it does not protect against wage theft in the form of unauthorized wage deductions that are the main issue in this case. Allowing nationwide companies such as Amazon, Walmart, or Starbucks to maintain some operations in a state with no real worker protections, and then contractually require all of its employees across the country to be subject exclusively to the wage laws of that one state, would rewrite the basic structure of employment law in this country. This cannot be allowed. Plaintiffs respectfully request that this Court reattach the two guardrails that have historically protected choice-of-law clauses from serious abuse; first, choice of law clauses must only be enforced where there is a "material connection" between the chosen state and the transaction at issue, as

---

[2]    Examples of state laws that provide greater protections than the FLSA include:  Cal. Labor Code § 2802 (requiring that an employer must reimburse an employee for employment expenses); 820 ILCS 115/19 ("deductions by employers from wages or final compensation are prohibited…," unless strict requirements are satisfied); Conn. Gen. Stat. § 31-71e ("No employer may withhold or divert any portion of an employee's wages…," unless strict requirements are met); Haw. Rev. Stat. Ann. § 387-2(a) (establishing $14.00 minimum wage); 7 Colo. Code Regs. 1103-1 at § 5.1 (meal and rest breaks); Mass. Gen. Laws Ann. ch. 149, § 148 (requiring timely payment of all earned wages); N.J. Rev Stat § 34:1A-1.18 (providing penalties for worker misclassification).

[3]    Tennessee permits any deductions that an employer wishes to impose as long as the employer obtains written authorization by the employee. *See* Tenn. Code. 50-2-110(a)(2).  Unlike the NJWPL and similar wage statutes,  Tennessee law does not provide a private right of action.

Judge Mays carefully held in *Robles v. Comtrak Logistics, Inc.,* 2016 WL

11528831 (W.D. Tenn. July 19, 2016); and second, where the choice of law would

violate the fundamental public policy of the state where the employees actually

work, then the provision is unenforceable, both under Section 187(2) of the

Restatement (Second) Conflict of Laws and Tennessee law.

## II.    TENNESSEE HAS NO MATERIAL CONNECTION TO THIS CASE

The parties agree that in order for Tennessee law to apply pursuant to Hub

Group's choice-of-law provision, Tennessee "must bear a material connection to

the transaction." *Blackwell v. Sky High Sports Nashville Operations, LLC*, 523

S.W.3d 624, 632 (Tenn. Ct. App. 2017). In order to satisfy this requirement,

Tennessee "must have some direct and relevant connection with the

transaction…." *Goodwin Bros. Leasing, Inc. v. H & B Inc.,* 597 S.W.2d 303, 306

(Tenn.1980) (citing Restatement (Second) of Conflict of Laws § 187(2)). Here,

there is no connection at all between Tennessee and the transaction at issue, i.e.,

Plaintiffs' work for Hub Group in New Jersey.

In its Brief, Hub Group plays rather fast and loose with the facts relating to

its alleged connection with Tennessee. First, it is undisputed that Hub Group was

never incorporated or headquartered in Tennessee. In 2006, Hub Group acquired

the assets of Comtrak–which was based in Memphis.  However, in 2014 (eleven

years ago), the Comtrak name was eliminated and was completely folded into Hub

Group, which has always been incorporated in Delaware and headquartered in Oak Brook, Illinois. Moreover, the IRS 1099 tax forms that Hub was required to file with the IRS, *see* Andujar Agreement, RE 48-4 at page 8;[4] Batista Agreement, RE 48-5 at page 8, are issued from Hub Group's headquarters in Oak Brook, Illinois.

Hub Group attached two agreements to its motion to dismiss, *see* RE 48-4, 48-5, one from each of the named plaintiffs. The Andujar agreement was executed by Hub Group's "New Jersey terminal manager" and by Plaintiff Andujar in New Jersey, whose address is listed in New Jersey. *See* RE 48-4 at page 17; Andujar Declaration, RE 51-9, Page ID #237 at ¶ 12. In several places, such as in the addendum on compensation, Kearney, New Jersey is listed as the location of Plaintiff Andujar's work. *See* RE 48-4 at pages 18, 21, and 24. Plaintiff Batista's agreement was signed by Batista in New Jersey on his own behalf and on behalf of his LLC, which is a New Jersey company with a New Jersey address, *see* RE 48-5 at page 17; moreover, the truck that he leased was received by him in New Jersey, *see* RE 48-5 at page 39. It is true that a company manager who is listed as being in Memphis signed the Batista agreement on behalf of Hub Group, but there is no dispute that Batista signed his agreement in New Jersey. *See* Batista Declaration, RE-51-9, Page ID # 240 at ¶ 12. Significantly, Plaintiffs never set foot in

---

[4] When referring to Andujar and Batista's contractual agreements with Hub Group, the referenced page numbers refer to the page appearing at the center bottom of the document. Unfortunately, the Page ID numbers on the Agreements are illegible.

Tennessee in connection with their work for Hub Group. *See* Andujar Declaration, RE 51-9, Page ID #236 at ¶ 9; Batista Declaration, RE 51-9, Page ID # 239 at ¶ 9.

A reading of the two agreements reflects that the Plaintiffs are being paid to make local deliveries for Hub Group in New Jersey and adjacent states, working out of the Kearney, New Jersey terminal. Indeed, Plaintiffs spent the majority of their time performing their work within New Jersey. *See* Andujar Declaration 51-9, Page ID #236 at ¶ 8; Batista Declaration, RE 51-9, Page ID #239 at ¶ 8. And there is not one iota of evidence of a connection between Tennessee and the local delivery work that Plaintiffs performed. Plaintiffs and the putative class provided local delivery services for Hub Group's customers, who are big box retailers such as Home Depot, Costco, and Best Buy, operating out of the Kearney, New Jersey terminal. *See* Complaint, RE-1, Page ID # 2-3 at ¶ 7.

Hub Group asserted in its Declaration that it maintains two terminals in the Memphis area, and a "fulfillment center," which is presumably a warehouse, in Tennessee. But neither the Declaration nor anything else even suggest any connection between these Tennessee locations and the local deliveries out of Kearney, New Jersey. Hub Group is a large nationwide trucking company that maintains sixty-five locations across twenty-one states, with multiple locations in at least eight states, see RE 51-2 at PAGE ID # 211-16, and several states (such as Illinois, Texas, and California) having more than three locations. *Id.* In its

Declaration, Hub Group claims that it has about 250 employees in Tennessee, including staff and drivers. But this is only part of the story, because according to Hub Group's SEC Filings, it has nearly 6,000 employees across the country;[5] so at most, *only four percent* of Hub Group's employees are in Tennessee. Given that Plaintiffs have not yet taken any discovery in this case, it is likely that Hub Group's additional purported connections to Tennessee would likewise fall apart under scrutiny.

As explained in Plaintiffs' opening brief, Hub Group has already litigated this precise issue in a similar case and lost. In *Robles v. Comtrak Logistics, Inc.*, 2016 WL 11528831 (W.D. Tenn. July 19, 2016), Hub Group sought to enforce the same Tennessee choice-of-law clause against a group of its truck drivers who worked in California. However, the district court denied Hub Group's motion to dismiss, holding that "the transactions have no material connection to Tennessee." *Robles*, 2016 WL 11528831, at *3. The facts are no different here.  In 2014, Hub Group folded all of Comtrak into Hub Group, which at the time and now is headquartered in Illinois. While the district court here attempted to distinguish the *Robles* case from this one saying it had additional facts here showing a Tennessee

---

[5]    *See* Hub Group, Inc., SEC Form 10-K (Feb. 27, 2024), available at https://investors.hubgroup.com/static-files/1aa0fa85-baaf-48ec-ac6e-f41d7384e7d0.  Hub Group, Inc. is the parent company of Hub Group Trucking, Inc.

connection; however, more than a decade after Robles was decided, Hub Group's Tennessee connection (through Comtrak) is even weaker. The district court referred to a prior agreement of Plaintiff Andujar and Comtrak, *see* RE 58 at PAGE ID # 537; however, this agreement was superseded by the subsequent agreements, and has no legal force. Moreover, this Agreement is not even before the Court on a motion to dismiss, as it is not the agreement that Hub Group has invoked in its motion to dismiss, nor was it the Agreement that Plaintiffs referenced in the Complaint.

Based on the above, Tennessee has no material connection to the parties or the transaction, and the District Court erred in finding otherwise.

Hub Group clings to the arguments that 1) Hub Group has a presence in Tennessee–an argument which would apply equally to twenty other states where Hub Group does business; and 2) that of the two contracts Hub Group executed with the two named Plaintiffs, one was signed by a manager in Memphis. But even for that contract, there is no evidence it was negotiated in Tennessee and Plaintiff Batista signed it in New Jersey. This does not even remotely equate to the "substantial" or "material" relationship necessary to justify the application of Tennessee law. Plaintiffs reiterate that this is not a case where the company is headquartered in the state whose law is chosen–there really is no connection except

for the connection that any nationwide company might have to any state where it does some business.

Court applying Section 187(2)(a) of the Restatement and similar choice of law rules do not support the district court's decision here. The most factually similar case is *Muhammad v. Deutsche Bank National Trust Co.*, No. 21-6243, 2023 WL 3067756, at *3 (6th Cir. Apr. 25, 2023) (unpublished). In that case, this Court applied Tennessee choice-of-law rules and held that an Indiana choice-of-law provision in a mortgage document would not be enforced, where the only connection was that the bank's parent company was located in Indiana. *Id.* at *3; *accord Delphi Automotive v Absmeier*, 167 F. Supp.3d 868, 875 (E.D. Mich 2016) (New York choice-of-law provision was unenforceable even though the employee worked briefly in New York and the company had "a significant presence" in New York and was publicly traded on the NYSE). Likewise, in this case, the Tennessee ties of Comtrak, Hub Group's prior subsidiary, do not support application of Tennessee law. Conversely, in an employment non-compete case, *Stryker Sales Corp. v Siroonian*, 2017 WL 11681453 (W.D. Mich. Mar. 6, 2017), the court enforced a Michigan choice-of-law provision because the employer was headquartered in Michigan and had a legitimate interest "to ensure that [the Michigan company] will have some certainty in defending its rights with employees all over the country." *Id.* at *3. In other words, at least where a

company is headquartered in a particular state, a choice-of-law provision designating that state might be enforced; however, absent that type of connection, courts in Tennessee and in this Circuit will not enforce a choice-of-law provision just because one party does some business in the chosen state, if the transaction at issue does not involve that state. *See also Blackwell*, 523 S.W.3d at 633 ("The simple fact that [defendant's] parent company was founded in California over a decade ago and now operates several facilities there is simply not sufficient to show a logical connection to the transaction at issue in this case.").

Hub Group relies upon the decision in *First Fidelity*, which held that there was a material connection sufficient to support enforcement of a Florida choice-of-law provision because "at all times related to the current dispute," one of the parties (the plaintiff) "was headquartered in Florida." *First Fid. Cap. Markets, Inc. v. Reliant Bank*, 2020 WL 514577, at *3 (M.D. Tenn. Jan. 31, 2020). Here, *at all times relevant to the dispute,* Hub Group was headquartered in Illinois (not Tennessee). Thus, *First Fidelity* supports Plaintiffs' position that the prior Tennessee headquarters of a non-party (i.e., Comtrak) – which predates the current dispute – is insufficient to support enforcement of the choice-of-law provision.[6]

---

[6]    The additional cases cited by Hub Group also support Plaintiffs' position. In *EPAC Techs., Inc. v. HarperCollins Christian Publ'g, Inc.*, 810 F. App'x 389, 400 (6th Cir. 2020), a material connection to New York was found where the plaintiff's CEO negotiated a contract in New York, there were continued discussions from the New York office throughout the term of the contract, and additional

III.   **UNDER SECTION 187(2) OF THE RESTATEMENT – OR ANY CONSTRUCTION OF TENNESSEE'S "CHOICE OF LAW" TEST – HUB GROUP'S CHOICE OF LAW CLAUSE IS UNENFORCEABLE BECAUSE NEW JERSEY HAS A MATERIALLY GREATER INTEREST IN THIS LITIGATION**

A. Tennessee Has Adopted Section 187(2) of the Restatement

Hub Group argues that Tennessee has not adopted the Restatement (Second) of Conflict of Laws § 187(2) (hereafter "Restatement § 187(2)"). *See* Hub Group Br. at 10-12. This argument should fail because it glosses over *Goodman Brothers Leasing, Inc. v. H&B, Inc.*, 597 S.W. 2d 303 (Tenn. 1980), wherein the Tennessee Supreme Court explicitly cited Restatement § 187(2) as the **sole** legal authority for its choice of law analysis under Tennessee law. *See id.* at 306 n. 2. As such, *Goodman Brothers* manifests a straightforward adoption of Restatement § 187(2). Thus, in *Walker v. Amvac Chemical Corp.*, 2018 U.S. Dist. LEXIS 239123 (E.D. Tenn. Mar. 21, 2018), Judge Mattice relied on *Goodman Brothers* for the proposition that "Tennessee, like a majority of states, bases its

---

communications also came from New York. *See id.* Here, there were no negotiations at all, let alone negotiations in Tennessee. And Plaintiffs never communicated with any Hub Group employees in Tennessee, either during or after their employment. *See* Andujar Declaration, RE 51-9, Page ID #236 at ¶ 4; Batista Declaration, RE 51-9, Page ID # 239 at ¶ 4. Moreover, in *Friendship Home Healthcare, Inc. v. Procura, LLC*, 2010 WL 500427 (M.D. Tenn. Feb. 5, 2010), a material connection to Utah was found where the defendant's Utah-based employee implemented the software at issue in the case; the defendant's "primary agent" who visited plaintiff was based in Utah, and payment for services was sent to Utah. *Id.* at *4. There is no allegation here that Plaintiffs ever received or sent payment to Tennessee.

choice-of-law provision rules on Restatement (Second) of Conflict of Laws §

187." *Id.* at \*21 n.6; *see also First Response, Inc. v. TMC Services, Inc.*, 2013 WL

5434712, \*6, (M.D. Tenn. Sep. 27, 2013) (Restatement § 187(2)'s applicability not

disputed).

Moreover, the notion that Tennessee has adopted Restatement § 187(2) is

consistent with this Court's general observation that "Tennessee abides by the

Restatement (Second) of Conflict of Laws." *Muhammad v. Deutsche Bank*

*National Trust Co.*, 2023 WL 3067756, at \*2; *see also Permobil, Inc. v. Westphal*,

2024 WL 993293, at \* (M.D. Tenn. March 7, 2024) ("Tennessee follows the

Second Restatement of Conflict of Laws."). Such notion also is unsurprising when

viewed against the Tennessee Supreme Court's application of other sections within

the Restatement (Second) of Conflict of Laws. *See Hataway v. McKinley*, 830

S.W. 2d 53 (Tenn. 1992) (adopting Restatement §§ 6, 145, 146, and 175).

In asserting that Restatement § 187(2) does not apply, Hub Group observes

that Tennessee courts citing Restatement § 187(2) do not always quote verbatim

from the entirety of § 187(2)'s text. *See* Hub Group Br. at 11-12. This observation

is misplaced. Judges regularly paraphrase binding rules to highlight those

components of the rule that are most consequential to the particular lawsuit. But

that does not disavow the general applicability of *other* components of the rule in *other* cases.[7]

In sum, *Goodman Brothers* establishes that Restatement § 187(2) is a rule that applies to choice-of-law disputes under Tennessee law. In some opinions, the court might recite § 187(2)'s text verbatim and in its entirety. *See*, *e.g.*, *First Response, Inc.*, 2013 WL 5434712, at *6, 2013 U.S. Dist. LEXIS 139375, at *19. In other opinions, the court might paraphrase or quote from certain portions of § 187(2)'s text. *See*, *e.g.*, *Goodman Brothers*, 597 S.W. 2d at 306 n.2. But such judicial drafting choices do not undermine Restatement § 187(2)'s availability – in its entirety – to guide judges in resolving choice-of-law disputes under Tennessee law. Indeed, Hub Group fails to reference any opinion holding that specific

---

[7]    For example, in a recent ADEA opinion, this Court recited the following legal rule:  "To make out a *prima facie* case [of age discrimination], Flowers must show (1) he was at least 40 years old at the time of the alleged discrimination; (2) he was subjected to an adverse employment action; (3) he was otherwise qualified for the position; and (4) he was replaced by a younger worker." *Flowers v. Westrock Services, Inc.*, 979 F.3d 1127, 1130 (6th Cir. 2020) (internal quotations omitted). Now, imagine a subsequent ADEA case in which the plaintiff alleges that a verbal reprimand is discriminatory and the employer argues that the verbal reprimand cannot constitute an "adverse employment action." Under such circumstances, the judge might write something like:  "Plaintiff must prove that he was subject to an adverse employment action in order to make out a *prima facia* case of age discrimination." In other words, in reciting the legal rule, the judge's opinion may focus on the specific component of the rule – the "adverse employment action" requirement – that is most pertinent to the parties' arguments. But that does not mean the judge is generally disavowing the applicability of the other three requirements for a *prima facie* case of age discrimination.

13

components of Restatement § 187(2) do **not** apply. That is because no such opinions exist.

B.  Even if Tennessee Courts Have Modified the Section 187(2) Analysis as Hub Group Now Suggest, the Choice of Law Clause is Unenforceable

Even if Hub Group is somehow correct that Tennessee courts have only adopted a portion of Section 187(2), the parties still agree that Tennessee law does not permit enforcement of a choice-of-law provision where to do so would violate a "fundamental public policy of a state with a materially greater interest." *See Goodman Brothers*, 597 S.W. 2d at 307 n.2 (Tenn. 1980). The full language of Section 187(2) directs that the choice-of-law provision may not violate a fundamental public policy of the state with a materially greater interest "in determination of the particular issue." *See* Restatement (Second) of Conflict of Laws § 187(2). Hub Group now argues on appeal that Tennessee has not adopted this precise language, and Tennessee law would only invalidate a choice-of-law provision that violates the fundamental public policy of the state "with a materially greater interest."[8] According to Hub Group, the remaining language of Section 187(2) –"…in the determination of the particular issue" – has been intentionally

---

[8]    Hub Group argued below that the question was which state had a materially greater interest "in the litigation." *See* RE 48-1 at PAGE ID # 55, 68, 69. Hub Group has now reversed course, and argues that the analysis does not involve an examination of the actual facts and issues at stake in the litigation, but that the question is which state has a greater interest in generic legal concepts such as worker classification.

removed from Tennessee's test. This is a distinction without a difference. Even if this Court were to accept Hub Group's position, Plaintiffs still prevail.

If the analysis were somehow limited to determining which state has a "materially greater interest," this language unavoidably calls for a comparison between the interests of two states. In order to meaningfully perform a comparison, one must define the subject in which the states' interests shall be measured. Restatement § 187(2) compares the states' interests in the "the determination of the particular issue." In applying Tennessee law, other courts have asked which state has a materially greater interest "in the transaction." *Carroll v. CMH Homes, Inc.*, 2013 WL 2431432, at *5 (E.D. Tenn. June 4, 2013).[9] In its briefing in the District Court, Hub Group repeatedly conceded that the question was whether New Jersey had "a greater material interest in the litigation." *See* RE 48-1 at PAGE ID # 55, 68, 69. Whichever terminology is used, New Jersey has a materially greater interest "in the litigation," "in the transaction," and "in the determination of the particular issue."

---

[9]    Another district court asked which state "has a greater interest in the parties' relationship…." *Wirtgen Am., Inc. v. Hayden-Murphy Equip. Co.*, 2023 WL 123499, at *5 (M.D. Tenn. Jan. 6, 2023).  Similarly, other courts have phrased the inquiry as analyzing which state had a greater interest "in the outcome of this case." *Ruiz*, 667 F.3d at 1324.

If one were to define the subject more generally, so as to call for a comparison of which state has a greater interest in "employee rights," or "worker classification," (as Hub Group now proposes on appeal), it would foreclose any comparison between the two states' interest.[10] According to Hub Group and the District Court's analysis below, while the laws of two states may be poles apart on a particular subject, neither could have a materially greater interest in the issue. Phrased another way, no state would ever have a "greater interest" than any other state in the general issue of employee rights or wage legislation – they would just have different points of view.[11] And if the test is whether the two states in question have an equal interest in the general topics of worker classification or payment of overtime wages (regardless of where the individuals worked or where the employment took place), then no state would ever have a greater interest, no matter the underlying facts, thereby preventing any comparison and rendering the phrase and the test absolutely meaningless. However, as the Third Circuit recently

---

[10]    Moreover, if Hub Group is correct that the state's interests are measured in regard to general concepts such as "defining employees" or "regulating businesses," it is not clear how the "materially greater interest" comparison can be undertaken. For instance, in the non-competition cases cited above, how could an employee demonstrate that one state has a greater interest in non-competition agreements than another? Likewise, in a franchise dispute, how could one state have a greater interest in the general topic of "franchise law."

[11]    To quote Bob Dylan, "we always did feel the same, we just saw it from a different point of view."

described when encountering a similar choice-of-law question, "both the geographic ties and the states' policies regarding the issue in question are important considerations." *Adler v. Gruma Corp.*, No. 23-3177, -- F.4th --, 2025 WL 1119925, at *12 (3d Cir. Apr. 16, 2025). Under Hub Group and the District Court's analysis, neither of these considerations are relevant, because all states have an equal interest in the abstract theories such as worker classification.

Hub Group relies exclusively on *Lubinski* for their newfound position that the question is which state has a materially greater interest in "worker classification," as opposed to a greater interest "in the litigation" (which is what Hub Group argued below). *See Lubinski v. Hub Group Trucking, Inc.*, 690 F. App'x 377, 379 (6th Cir. 2017). Even if *Lubinski* suggests that this is the correct formulation, the decision is unpublished and therefore has "no precedential weight" and no binding effect. *Sheets v. Moore,* 97 F.3d 164, 167 (6th Cir.1996). Moreover, it appears that the real issue in *Lubinski* was that the plaintiffs failed to offer any evidence or argument that Illinois had a materially greater interest than Tennessee, so the court was likely unconcerned with describing the precise analysis at issue.

As discussed above, the only way to answer which state has a "materially greater interest" must be with reference to the matter or issue posed by the particular case, otherwise the phrase has no meaning. In this case, therefore, the

question must be which state has a "materially greater interest" in whether these New Jersey truck drivers are classified as employees or independent contractors, and whether they are entitled to certain legal rights such as full payment of wages and overtime pay. And in this regard, two points are clear. First, Tennessee has no interest in the rights of New Jersey workers at all. The Plaintiffs and their work have no connection whatsoever to Tennessee: they never drove or delivered in Tennessee; their supervisors are not located in Tennessee; and no decisions about their work were made in Tennessee. Relatedly, Tennessee has no interest – let alone a greater interest – in how these workers are treated with respect to their employment, since Tennessee is not the headquarters, domicile nor place of incorporation of Hub Group.

Second, even putting aside all the efforts that New Jersey has made in combatting independent contractor misclassification and ensuring fair wages for its workers, *see* Doc. 20 at 16-20, certainly New Jersey has a materially greater interest in how its workers are classified and paid at New Jersey worksites. Since the question of independent contractor classification affects the tax revenues collected by the state, New Jersey has explicitly stated its interest in combatting misclassification in order to ensure the receipt of proper payroll taxes, while Tennessee would have no interest in ensuring that New Jersey employees and an Illinois corporation like Hub Group pay certain taxes or make certain withholdings

from wages. *See* New Jersey Executive Order No. 25 (May 3, 2018), RE 51-16, Page ID # 315 (noting that misclassification contributes to "loss of State and federal payroll taxes…"). In addition, law-abiding New Jersey businesses that compete with Hub Group will be disadvantaged if their competitors are permitted to significantly lower their labor costs by exempting themselves from the New Jersey ABC test and the New Jersey wage laws. Thus, New Jersey-based employers – not Tennessee employers – are harmed if Hub Group is permitted to apply its Tennessee choice-of-law provision in this case. *See id.* (explaining that misclassification "harms law-abiding businesses who follow the rules…").

In sum, even if Hub Group is correct in asserting that a choice-of-law provision that would violate a fundamental public policy of a state is enforceable unless it is shown that such state has a "materially greater interest" than the chosen state, then the Tennessee choice-of-law clause still cannot be enforced in this case, because under any rational meaning of the phrase, New Jersey has a "materially greater interest" than Tennessee.

## IV.    ALTERNATIVELY, THE CHOICE OF LAW CLAUSE IS UNENFORCEABLE UNDER THE REASONING OF THE SEVENTH CIRCUIT IN *DIAKON* AND BECAUSE TENNESSEE'S WAGE LAWS DO NOT HAVE EXTRATERRITORIAL EFFECT

As Plaintiffs have explained in their opening brief, an alternative ground for declining to enforce the choice-of-law provision is found in the Seventh Circuit's decision in *Diakon Logistics, Inc.*, 44 F.4th 1048 (7th Cir. 2022). In that case, the

court held that since the plaintiffs were Illinois-based drivers and were asserting

Illinois *statutory* claims, their claims were governed by the Illinois Wage Payment

and Collections Act ("IWPCA"), 820 ILCS 115/1 to 115/15, and not Virginia law

pursuant to a choice-of-law provision:

> If the critical test for determining whether plaintiffs count as employees
> for purposes of the Act comes from the statute rather than a contract,
> then the Service Agreement is irrelevant, no matter what it says. This
> means that Illinois would not honor either the declaration of
> independent-contractor status or the choice-of-Virginia-law clause….
> Another way of saying this is that plaintiffs' claims to undiminished
> wages arise from their work in Illinois, not from their contracts.

*Diakon*, 44 F.4th at 1052.

This Court should reach the same conclusion. Plaintiffs are asserting New

Jersey statutory rights, and New Jersey has extremely protective legislation

regarding independent contractor misclassification and the damages that result

therefrom. This Court should hold, like the Seventh Circuit, that Plaintiffs' claims

are governed by the wage laws of the state in which they worked, regardless of any

contractual terms included in their agreement, because the NJWPL (just like the

IWPCA) provides the applicable "employee" definition, and that statute is intended

to void agreements "that defy the public policy" of the statute. *Carrow v. FedEx

Ground Package Sys., Inc.*, 2019 WL 7184548, at *6 (D.N.J. Dec. 26, 2019).

Hub Group barely mentions the *Diakon* decision in their brief and do not

identify any flaws in the *Diakon* analysis, nor do they identify anything that would

distinguish the NJWPL from the IWPCA that was at issue in *Diakon*. Instead, Hub Group mischaracterizes Plaintiffs' argument, pretending as if Plaintiffs have argued that the choice-of-law provision is unlawful because it "is an unenforceable waiver of an individual's statutory rights." *See* Hub Group Br. at 26. Plaintiffs have never made this argument, and such an argument is unrelated to the holding of *Diakon*.[12]

Finally, in their opening brief, Plaintiffs rely upon the *Cory Holdings* and *Goya* decisions, which hold that workers' wage-and-hour claims must to be brought under the wage laws of the state in which they worked, rather than choosing the applicable wage statute based on the choice-of-law provisions in the parties' contract. *See Ortiz*, 2020 WL 1650577, at *5 (plaintiff was given leave to amend his complaint to assert a claim under Pennsylvania law as the plaintiff's "home state of Pennsylvania has a marked interest in ensuring that persons who live and work in that state have wage protections."); *Lupian*, , 240 F. Supp. at 314 ("the IWPCA is the proper statute to apply in this case where Illinois workers are claiming violations of wage laws in connection to conduct occurring within Illinois"), subs. history at 905 F.3d 127 (3d Cir. 2018).

---

[12]    A review of the *Diakon* decision demonstrates that the decision has nothing to do with the anti-waiver provisions of the IWPCA, which are neither cited nor referenced anywhere in the decision.

21

Hub Group does not argue – nor could they – that Tennessee's wage laws apply outside of Tennessee. Nor does Hub Group argue that the parties' choice-of-law provision may be used to expand the scope of a state statute. Instead, Hub Group merely states in a single sentence that these cases are "irrelevant."   *See* Hub Group Br. at 26. However, these considerations are highly material to the choice-of-law analysis at issue in this case, as shown by the decision of Court of Appeals of Ohio in *Harris v. Vision Energy, LLC*, 250 N.E.3d 208 (Ohio Ct. App. 2024).

In *Vision Energy*, the plaintiff worked as an independent contractor of an Ohio-based company. *See id.* at 212-214. He performed local duties at the site of an Illinois wind farm. *See id.* at 213. The plaintiff brought suit alleging non-payment of wages under the IWPCA. *Id.* at 214. The defendant argued that Illinois statute did not apply because of an Ohio choice-of-law provision in the parties' agreement. *See id.* The court held that the Ohio choice-of-law provision did not require dismissal of the plaintiff's IWPCA claims. *See id.* at 218. In reaching this conclusion, the court observed that there was no reason to believe that Ohio's wage laws would apply extraterritorially to the plaintiff's Illinois-based work. *Id.* at 218. The court explained the significance of this consideration as follows:

> Given that conclusion, enforcing the parties' choice of Ohio law provision here would lead to an untenable result where, despite Illinois's fundamental policy of protecting wages through the IWPCA, Mr. Harris would have worked in that state for years without the protection of *any* state's wage laws. He would then be left in a legal void of wage protection, and such a result is contrary to Illinois's fundamental policy as expressed through the

IWPCA.

*Id.*

The same is true here in regard to Plaintiffs' claims under New Jersey law. Enforcing the Tennessee choice-of-law provision in this case leads to the untenable result in which Plaintiffs worked for years for Hub Group in New Jersey, without the protections of any state's wage laws at all, given that Tennessee's wage laws cannot govern their out-of-state work. This creates a "legal void of wage protection," which would undermine the fundamental public policy of New Jersey. "Simply put, refusing to apply [New Jersey] law to [plaintiffs'] work in [New Jersey] would raise comity concerns and threaten the effectiveness of fundamental [New Jersey] law in protecting workers in that state." *Harris v. Vision Energy, LLC*, 250 N.E.3d at 218.

The holding in *Vision Energy* is part of a growing consensus among courts that workers are subject to the wage laws of the state in which they work, and that contractual provisions purporting to apply the wage laws of a different state have no effect.[13] Indeed, more than a decade ago, the Massachusetts Supreme Judicial

---

[13]      See *Diakon Logistics, Inc.*, 44 F.4th at 1052; *Ruiz v. Affinity Logistics Corp.*, 667 F.3d 1318 (9th Cir. 2012) *Melia v. Zenhire*, 967 N.E.2d 580 (Massachusetts workers would be subject to Massachusetts wage laws despite New York choice of law); *Panos v. Timco Engine Ctr., Inc.,*  677 S.E.2d 868, 873-74 (N.C. Ct. App. 2009); *Harris v. Vision Energy, LLC*, 250 N.E.3d 208 (Ohio Ct. App. 2024); *Ortiz v. Goya Foods, Inc.*, 2020 WL 1650577, at *4 (D.N.J. Apr. 3, 2020); *Lupian v. Joseph Cory Holdings, LLC*, 240 F. Supp. 3d 309, 313 (D.N.J. 2017); *Berberian v.*

Court expressed confidence that modern choice-of-law rules tend to produce consistent results across jurisdictions, and thus a court outside of Massachusetts would apply the Massachusetts wage laws to wage claims accruing in Massachusetts. *See Melia v. Zenhire, Inc.*, 967 N.E.2d 580, 595-96 (Mass. 2012) (observing that sister states would "give effect to Massachusetts fundamental public policy" and would "adjudicate wage claims under Massachusetts law"). Consistent with these observations, one commentator has noted that "[t]he idea that the agreement of two private parties–one of whom may have all effective bargaining power–can displace an otherwise applicable policy mandate is a fairly radical position, and it is one that advocates of contractual choice have generally not tried to defend."  Katherine Florey, "Substance-Targeted Choice-of-Law Clauses," 106 Va. L. Rev. 1107, 1168 (2020).

In contrast to this sentiment and the overwhelming body of caselaw supporting Plaintiffs' position (see note 14, *supra.*), Hub Group has relied exclusively on the unreported decision in *Lubinski* as an example of a court enforcing a choice-of-law provision to preclude application of the wage laws of the

---

*G-Form, LLC*, 2014 WL 12700578, at *5 (D. Mass. Aug. 29, 2014) (Massachusetts employee could assert Massachusetts wage claims despite Rhode Island choice of law); *Tavares v. S-L Distribution Co.*, 2014 WL 12951783 (M.D. Pa. Jan. 14, 2014); *Wright v. Freedom Mortg. Corp.*, 2009 WL 10671337, at *4 (S.D. Cal. May 26, 2009) (California employee could assert claims under California wage statutes despite contrary choice-of-law provision).

state in which employees worked. Plaintiffs respectfully suggest that *Lubinski* has become an outlier in this area of the law, and this Court should hold that pursuant to Tennessee's choice-of-law rules, dismissal of the New Jersey wage claims in this case violates the fundamental public policy of New Jersey, which has a materially greater interest in all aspects of this litigation.

## V.    CONCLUSION

For the reasons stated above and in their Opening Brief, Plaintiffs-Appellants respectfully request that the Court reverse the decision of the District Court dismissing their NJWPL and NJWHL claims, and remand so that Plaintiffs may seek to vindicate their non-waivable statutory rights under New Jersey law.

Dated: June 13, 2025

Respectfully Submitted,
Plaintiffs-Appellants,
By their attorneys,


*/s/ Harold Lichten*_____
Harold Lichten, Esq.
Matthew Thomson, Esq.
Lichten & Liss-Riordan, P.C.
729 Boylston Street, Suite 2000
Boston, MA 02116
Telephone: (617) 994-5800
hlichten@llrlaw.com
mthomson@llrlaw.com

Peter Winebrake, Esq.
Mark J. Gottesfeld, Esq.
Winebrake & Santillo, LLC
715 Twining Road, Suite 211
Dresher, PA 19025
Telephone: (215) 884-2491
pwinebrake@winebrakelaw.com
mgottesfeld@winebrakelaw.com

## CERTIFICATE OF COMPLIANCE

The undersigned counsel for Plaintiffs-Appellants furnish the following in compliance with FRAP Rule 32(a)(7)(B):

I hereby certify that this Brief conforms to the rules contained in FRAP Rule 32(a)(7)(B). This brief was prepared in Times New Roman, using 14-point type in the body and footnotes, using Microsoft Word. The referenced word processing system indicates a total word count of 6,318 words, beginning at page "1," as authorized and determined under FRAP Rule 32(a)(7)(B).

Dated: June 13, 2025

*/s/ Harold Lichten*_____
Attorney for Plaintiffs-Appellants

## CERTIFICATE OF SERVICE

I hereby certify that on June 13, 2025, the Brief of Plaintiffs-Appellants was filed with the Clerk of the Court for the United States Court of Appeals for the Sixth Circuit by using the appellate CM/ECF system. I certify that all participants in the case are registered CM/ECF users and that service will be accomplished by the appellate CM/ECF system.

*/s/ Harold Lichten*_____
Attorney for Plaintiffs-Appellants